| 86 | 39 |
| 105 | 733 |

| 86 | 39 |
| 123 | 6 |

| 86 | 39 |
| f133 | 35 |

CASE 7—INDICTMENT—JUNE 18.

# Estep v. Commonwealth.

APPEAL FROM PIKE CIRCUIT COURT.

1. SELF-DEFENSE.—Where one who is assailed in his own house believes, and has reasonable grounds to believe, that his assailant is about to take his life, or inflict great bodily harm upon him, he has the right to defend himself then and there, and is not required to escape from his own dwelling-house.

2. DEFENSE OF ONE'S FAMILY.—As the defendant's wife had been unlawfully assaulted with a rock, and was being beaten in his own house, he had the right to go to her rescue and defense, and if, by force or threats, the husband of her assailant endeavored to prevent him, he had the right to oppose force to force; and if he at the time believed, and had reasonable grounds to believe, his wife was in immediate danger of losing her life or suffering great bodily harm, he had the right to use whatever reasonable means were necessary, or reasonably appeared to him to be necessary, to rescue or defend her, even to taking the life of the husband of her assailant, and the jury should have been so instructed.

CONNELLY & CLINE AND R. T. BURNS FOR APPELLANT.

The judgment should be reversed for the reason that the evidence shows a clear case of justification, and for the further reason that the court misinstructed the jury. A man has a right to protect himself, his own castle and the inmates thereof, against any unlawful attack or assault, and to that end he is not required to retreat, but may stand and resist, using such force as may seem to him at the time to be necessary, even to the killing of the assailant. (Wright v. Commonwealth, 8 Ky. Law Rep.; Wait's Actions and Defenses, vol. 6, pp. 644-647; Bishop's Criminal Law, vol. 1, 858 and 870.)

P. W. HARDIN, ATTORNEY-GENERAL, FOR APPELLEE.

1. This court cannot reverse upon the ground that the verdict is against the evidence. It is the province of the jury and not of the court to weigh the testimony.

2. The instructions correctly present the law of the case.

JUDGE LEWIS DELIVERED THE OPINION OF THE COURT.

Appellant being indicted for the murder of Martin Scarberry, brother of his wife, was convicted of man-

slaughter, the homicide occurring, according to the testimony, under the following circumstances:

The residences of the two were not much more than a quarter of a mile apart, and on the day of the killing the wife of the deceased, leaving him a short distance from it, went alone into the dwelling-house of appellant, where he, his wife and others were, and without speaking to any of them seized a tin cup, whereupon appellant's wife said to her she took a good deal of authority there, to which she replied that she took enough to get her things, and would also take her tea-kettle, and the other then told her to take her things, get out of the house, and stay out. She did then go out, but soon returned with a rock under her apron, took a seat and remarked she intended to stay there an hour for aggravation. The two women, between whom there appears to have been ill-feeling, then renewed the quarrel, but what was said by them does not appear. While they were thus engaged the deceased rapidly approached the house, having rocks in his hands; but when near to it he sat down on a log, and after sitting there a moment he sprang into the house, and jumping up two or three times, he said with an oath, having the rocks still in his hands, he was the best man who ever jumped into that house. Thereupon his wife threw the rock she had under her apron at the wife of appellant, which struck the wall of the house near her head. The two women then clinched each other and fell upon the floor, and the wife of the deceased, having the advantage, commenced to beat the other in the face with her fist. Appellant, who does not appear from the testimony to have previously said or done any thing, then went up to the

deceased, and putting his hand on his shoulder, said: "Martin, old brother, you take your wife out of here and I will take care of mine, and let us have no fuss; peace is the best thing." To the which deceased replied with an oath, he had come there for satisfaction and was going to have it. He, in that connection, in the language of the witness, asked appellant "about some talk;" in reply to which the latter said "he had not had it," and asked if that would not satisfy him. But the deceased again said he had come there for satisfaction, and was going to have it. Appellant then started as if going to part the women, who were still fighting, when the deceased pushed him back saying G—— d—— you, stand back, or I will kill the last G—— d—— one of you. A woman present testifies that she also started to part the women, but was likewise shoved back by the deceased, who then threw up his right hand, still having the rocks, and was at that time shot by appellant with a pistol, the ball entering his back, as the witnesses say, where the suspenders crossed, and from the effects of the shot he died in a few days. The two women continued to fight after the shot was fired until parted by appellant and the woman who had before attempted to do it.

The evidence shows that the deceased was the best man in the neighborhood as to physical strength, and his character for violence was bad.

As the jury alone have the right to judge of the weight to be given to the evidence and the credibility of the witnesses, the only question before us is, whether the lower court properly and fully instructed as to the law applicable to the case.

In the third instruction it is made a condition of the right of appellant to take the life of the deceased, that he had no other safe or apparently safe means of escape from the impending danger to himself.

The instruction in that particular is erroneous and misleading. For it implied a duty of appellant to escape, even by leaving his own dwelling-house, which had been entered by the deceased in a lawless manner, and with what was equivalent to a threat of violence to the inmates. Whereas, he was not required to leave it, but had the right to stand his ground and defend himself as well as the inmates of his house.

In the fourth instruction, the right of the appellant to stand and defend himself is made to depend upon the fact that the deceased had sought him out for the purpose and with the intent to kill him, or inflict great bodily harm, and was, when the fatal shot was fired, manifesting an intention to commence the attack. No such conditions are or should be annexed to the right of a person to defend himself when assaulted in his own dwelling-house ; nor is he in any case required to retreat therefrom to avoid his assailant ; but if he believes, and has reasonable grounds to believe, one is about to take his life or inflict great bodily harm upon him in his own dwelling-house, he has the right to defend himself then and there, and is not required to escape therefrom.

Instruction No. 2, asked by appellant and refused by the court, it seems to us, is even less favorable to the appellant than he was entitled to have it. It is as follows :

"If they believe from the evidence, that at the time

of the difficulty the wife of the deceased was making an assault upon the wife of the defendant, and that the deceased was present, aiding and abetting his said wife in making said assault, and that the defendant believed, and had reasonable grounds to believe, that death or great bodily harm was then about to be inflicted upon his wife, he had a right to use all necessary means to protect his wife, even to slaying the deceased."

We are unable to perceive upon what ground the lower court refused that instruction. For the defendant was certainly entitled to an instruction embodying substantially the principle contained in it. It certainly could not have been upon the supposed want of evidence that the deceased did aid and incite his wife in making the assault. For she did not throw the rock with which she had armed herself until the deceased had forcibly and violently entered the house similarly armed, and obviously with hostile intent. Moreover, when appellant requested him to take his wife away, that there might be peace, he refused to do so, and even with force prevented appellant from separating the two women.

But, in our opinion, it was not necessary that the deceased should have aided and abetted his wife in making the first assault with the rock upon the wife of appellant, in order to give to the latter the right to rescue his wife from her assailant, and defend her against further violence. His wife having been unlawfully assaulted with a rock, and then being beaten in his own house, he had the unquestionable and unconditional right to go to her rescue and defense, and if by force or threats the deceased endeavored to prevent

him, he had the right to oppose force to force ; and if he at the time believed, and had reasonable grounds to believe, his wife was in immediate danger of losing her life or suffering great bodily harm, he had the right to use whatever reasonable means were necessary, or reasonably appeared to him to be necessary, to rescue or defend her, even to taking the life of the deceased.

For the errors indicated the judgment is reversed for a new trial, and further proceedings consistent with this opinion.