CASE 92—INDICTMENT FOR HOMICIDE—FEB. 17.

# Utterback v. Commonwealth.

APPEAL FROM BOURBON CIRCUIT COURT.

1. CRIMINAL LAW—ARRAIGNMENT—WAIVER.—Reading the indictment to the jury after the evidence has been heard in part with a formal plea of not guilty by defendant's attorney in his presence with a waiver of the re-introduction of the evidence already heard will be treated as a substantial compliance with secs. 154-5 of the Criminal Code; but if otherwise, the defendant will be treated as having waived the irregularity.

2. SAME—INSTRUCTIONS—SELF-DEFENSE.—In the assertion of a disputed property right, one is not justified in arming himself and in the attempt to assert such right to treat his adversary as a felonious trespasser if the latter seeks to assert his claim in the same way. In such a state of case the ordinary instruction on the subject of self-defense should be given, and not that appropriate to a defense of one's self in his own dwelling.

3. SAME.—In defining the offense of homicide, the words: "Not in the necessary or apparently necessary defense of himself or his son William Utterback," should be substituted for the words "not in his necessary self defense."

4. SAME.—In this case where the defendant and the deceased met at a place where one was asserting the right to plow a passway, and the other denying his right; the court should have instructed the jury that if the defendant commenced the difficulty by making the first demonstration to shoot, or if both defendant and deceased went on the premises armed, determined on a conflict, and on meeting, the combat was by mutual consent, then in either event defendant could not rely on the right of self-defense unless he in good faith withdrew from the conflict and only re-engaged in it in defense of his son; and if he fired the fatal shot in defense of his son, he was excusable or not according as the son would be innocent or guilty had he himself fired the shot in defense of himself.

5. SAME—EVIDENCE.—The evidence offered by the defendant to show his right to the road in the bottom and upon what terms that

had been exchanged for the road on the hill, whether the new road or turn-out was made, how long it had been used, and the character of its use, and that Sharp consented to the use of this road, should have been allowed to go to the jury because such evidence serves to show the good faith of the defendant and illustrates the measure of his punishment even if guilty.

KENNEDY & WILLIAMSON, FOR THE APPELLANT. (TURNER & HAZELRIGG, AND E. M. DICKSON, OF COUNSEL).

1. The record shows that appellant killed Dudley Clinkenbeard in his necessary self defense.

2 The court erred in giving instruction No. 1 to the jury. Gill v. Com., 18 Ky. Law Rep., 562.

3. The court erred in instructing the jury as to the law of self-defense as contained in instruction No. 2. Gill v. Com., 18 Ky. Law Rep., 562; Allen v. Com., 86 Ky., 647; Cockrill v. Com., 95 Ky., 22; Mallicoat v. Com., 16 Ky. Law Rep., 359; Roe v. Com., 6 Ky. Law Rep., 364; Campbell v. Commonwealth, 88 Ky., 402; Estep v. Com., 86 Ky., 44; Trusty v. Com., 19 Ky. Law Rep., 706; Chapman v. Com., 12 Ky. Law Rep., 704; Jones on Easements, secs 104, 165, 182, 266, 844, 352, 353, 826 and 830; Talbott v. Thorn, 91 Ky., 421.

4 There was no arraignment of the defendant, and the arraignment was not dispensed with by the court with the consent of appellant. Crim. Code, secs. 154, 155, 219; Galloway v. Com., 5 Ky. Law Rep., 214; Minor v. Com., 5 Ky. Law Rep., 176; Disney v. Com., 9 Ky. Law Rep., 414; Farris v. Com,, 14 Bush, 367.

5. The court permitted the jury to hear incompetent and irrelevant evidence. Bradshaw v. Com., 10 Bush, 576; Kaelin v. Com., 84 Ky., 366; Radford v. Com., 9 Ky. Law Rep., 380.

6. The court refused to permit the appellant to introduce competent and material testimony, as shown by avowals 1, 2, 3, 4, and 5. Jones on Easements, secs. 104, 165, 182, 266 344, 352, 853, 826, 830; Talbott v. Thorn, 91 Ky., 421; Roe v. Com., 6 Ky. Law Rep., 364; Campbell v. Com., 88 Ky., 402.

EMMETT M. DICKSON ON SAME SIDE. (KENNEDY & WILLIAMSON AND HAZELRIGG & TURNER, OF COUNSEL).

1. Appellant contends facts not fully stated by attorney for Commonwealth and the law of self-defense is misapplied.

2. Errors in instruction No. 2.

Utterback v. Commonwealth.

(a) In assuming that Sharp was in possession and had the right to rent to Clinkenbeard the new road.

(b) Rights of defendant in what is called new road. Lawson v. Rivers, 13 Am. Dec., 745, 746; Talbott v. Thorn, 91 Ky., 421.

(c) Change of way by acquiescence—question should be submitted to the jury. Jones on Easement, chap. 9, p. 283, secs. 352 and 353, chap. 17, p. 667, sec. 830; 19 Am. & Eng. Ency. of Law, 106.

3. What constitutes possession—What forcible entry. Carrine v. Westerfield, 3 A. K. Mar., s. p., 331; Chiles v. Stephen, 3 A. K. Mar., s. p. 346; Brumfield v. Reynolds, 4 Bibb., 388; Haupt v. Pittaluga, 6 Bush, 493; Civil Code, sec. 452.

4. Rights of a trespasser. Wharton's Crim. Law, vol. 1 (10th ed.) secs. 493, 500, 501, 506.

5. Error of court in instruction No. 2, in assuming certain facts and giving undue prominence to others. Campbell v. Com., 13 Ky. Law Rep., 17; Sackett's Instructions to Juries (2d ed.) p. 18, par. 13; p. 19, par. 16.

6. Verdict made by lot.

TURNER & HAZELRIGG on the same side. (KENNEDY & WILLIAMSON, and E. M. DICKSON, of counsel).

1. The evidence shows not only that appellant acted in self defense in killing decedent at the time of the difficulty, but that he was willing to make reasonable concessions to avoid the trouble, and told Sharp he would not object to the plowing of the road if the old one was repaired and made passable; while the decedent made and would make no concessions whatever, but told Sharp "if he ever plowed it, he intended to plow it then" and would not at Sharp's urgent request and advice "wait a few days until things cooled down."

2. While the location of the pass-way of one over the land of another can not be changed by either the grantor or the grantee without the consent of the other, if it is changed by either and the other uses the way as changed or stands by and sees it used for such a length of time as to show his acquiescence in the change, he will not be heard to complain, and three years is a sufficient time to show such acquiescence. Jones on Easements, secs. 352, 353, 830; 19 Am. & Eng. Ency. of Law, 106, title "Private Ways."

3. The instructions should have embraced the idea that even if appellant did not have, according to the strict letter of the law, the right to the use of the new road, yet if he in good faith believed he had, and believed he had a property right therein, and so believing and having good and reasonable grounds to so believe, went there for the purpose of protecting the same and preventing its destruction, he was not deprived of the right of self defense. The essential element in crime is the intent, the motive which prompts its commission, and in a criminal prosecution a man could not be a felonious trespasser who had no thought of either committing a trespass or a felony but only proposed to defend what he in good faith believed to be his property rights.

4. The courts should have submitted to the jury the question as to whether the change in location of the road was intended to be permanent and in lieu of the old road or only temporary, or until the old road could be repaired and made passable. If the change was to be permanent, appellant was in no sense a trespasser, and could not have been; if it was only temporary he was not a trespasser until he had been forbidden to use the new road and whether he had ever been so forbidden should have been submitted. 19 Am. & Eng. Ency. of Law, 106, title "Private Ways."

ROBT. B. FRANKLIN, COMMONWEALTH'S ATTORNEY, FOR THE APPELLEE. (W. S. TAYLOR, ATTORNEY-GENERAL, OF COUNSEL).

1. Self-defense. Scott v. Com., 16 Ky. Law Rep., 702; Thompson v. Com., 16 Ky. Law Rep., 168; Shafer v. Com., 10 Ky. Law Rep., 285; Hasson v. Com., Idem, 1054; Wilcoxen v. Com., 15 Ky. Law Rep., 261; Combs v. Com., Idem, 659; Crawford v. Com., Idem, 356; Hays v. Com., 12 Ky. Law Rep., 611; Baker v. Com., 93 Ky., 302; Com. v. Hourigan, 89 Ky., 305; Johnson v. Com., 94 Ky., 578.

2. Easement. 2 Washburn on Real Estate, book 2, chap. 1, 3; Taylor v. Whitehead, Doug., 720 (Ld. Mansfield); Osborn v. Wise, 7 Carr & Payne, 761; Kent's Commentaries, (3d. ed.) p. 424; Williams v. Safford, 7 Barb., 309; Blackstone Com., (2d ed.) p. 36 and note (Lewis); Ballard's R. E. Stat. Ky., p. 354.

3. Waiver of arraignment. Crim. Code, secs. 155, 340; Bishop Crim.

Procedure, vol. 2, secs. 733, 1354 and citations; U. S. v. Molloy, 31 Fed. Rep., 19.

JUDGE HOBSON DELIVERED THE OPINION OF THE COURT.

The appellant, Hezekiah Utterback, was indicted in the Bourbon Circuit Court for the murder of Dudley Clinkenbeard, and having been found guilty of manslaughter, and his punishment fixed at five years in the penitentiary, he seeks by this appeal a reversal of the judgment against him.

The first point made is that he was not arraigned, and did not waive arraignment. The facts about this are that after the jury were sworn and some testimony heard, it was remembered that the indictment had not been read, and no plea entered for the defendant. The Commonwealth's attorney thereupon, by leave of the court, and in the presence of the defendant and his counsel, read the indictment to the jury, and after reading it, turned towards the defendant and his attorneys, and inquired what his plea was, to which one of the defendant's attorneys responded, "Not guilty;" and thereupon the examination of the witnesses was resumed, the attorneys consenting that the testimony that had been given should be considered without being reintroduced. The Criminal Code of Practice (sections 154 and 155) provides: "An arraignment is a reading of the indictment by the clerk to the defendant and asking him if he pleads guilty or not guilty to the indictment. The arraignment shall only be made on indictments for felony, and may be dispensed with by the court with the defendant's consent." The reading of the indictment to the jury in the hearing of the defendant was a substantial compliance with the statute. His entering the plea of not guilty without objection, after the indictment was read by the Commonwealth's attorney,

and agreeing through his counsel that the evidence already
taken might be considered in, was a waiver of the irregu-
larity in the proceedings of the court. In Galloway v.
Com., 5 Ky. Law Rep., 213, where there was a some-
what similar irregularity, this court said:

"In this case, though not done at the precise time re-
quired by the Criminal Code, the duty was performed be-
fore the close of the evidence for the Commonwealth, while
it was still in the power of the court to recall the witness-
es, and give to the party desiring an opportunity to re-ex-
amine them. And, as no motion was made for the recall of
the witnesses, we do not perceive how the substantial
rights of the defendant were prejudiced by the omission
now complained of. Nor is the mere fact that the indict-
ment was read by an attorney employed to prosecute, in-
stead of the clerk or Commonwealth attorney, ground for
reversal, having been done at the request of the latter of-
ficer, in the presence of the court and of the defendant,
without objection made at the time."

In the case at bar the defendant testified in his own be-
half, making no question of a want of arraignment until
after the close of the trial. The case was fully heard, and
we do not see that any substantial right of his was preju-
diced in this matter. A judgment of conviction can not be
reversed in this court for every error of law occurring at
the trial. Our jurisdiction in such cases is wholly depend-
ent upon the statute, which provides: "A judgment
of conviction shall be reversed for any error of law ap-
pearing on the record when upon consideration of the
whole case the court is satisfied that the substantial
rights of the defendant have been prejudiced thereby."

For an intelligent understanding of the other errors
relied on, it will be necessary to state with some fullness

the facts which the evidence on the trial conduced to show. Appellant, Utterback, was a son-in-law of John Sharp. The deceased Clinkenbeard, had married Sharp's grand-daughter, and both lived near him. Utterback had bought his farm from Sharp, and had no outlet to the turnpike except over Sharp's land. For many years he had used a road up the creek, but, for Sharp's convenience, he gave up that road, and took a road over the hill, and had used this road for some twenty years. Two or three years before the trial, a part of this road becoming bad, Utterback made a new track for about 200 feet at one place in the road alongside of it, and only a few feet from it. To this there was at the time no objection, and he and the other neighbors used the road, including the turnout at pleas-ure. Sharp rented to Dudley Clinkenbeard the land lying north of the road, and to William Utterback, the son of appellant, Hezekiah, the land south of the road. On the morning of April 21, 1898, appellant passed over this road with some hogs, and found that Clinkenbeard was plowing out to the old road, and breaking up the new road, or turnout, only one furrow having been run in the new road. He went to see Clinkenbeard, protesting against his plowing up this road, and Clinkenbeard referred him to Sharp, saying he would do what Sharp said. Appel-lant then went to see Sharp, who said he was willing to give him one road, but not two, and finally agreed that he would have the old road plowed and put in order. Ap-pellant went home to dinner, and after dinner armed him-self with his rifle, and went out to the road, several more furrows having in this time been plowed in it. In the meantime, Clinkenbeard also went to see Sharp, evincing a disposition not to plow the road if he said so; but Sharp insisted upon his plowing it. Clinkenbeard then repair-

ed to a neighbor to borrow buckshot, stating that he had two cartridges that were good for fifty or sixty yards. After Sharp got his dinner, he went out to the road with a negro and team, for the purpose of harrowing the old road, and he and the negro went to work at this. At this time, appellant, Utterback, had come up with his rifle, and sat down in the road, with his feet in the last furrow made in it, and his back to the unplowed land, his rifle resting across his lap. There is some controversy as to what occurred next, but as the jury may have believed appellant's version of it, and he was entitled to have them instructed on this hypothesis, it will be proper to consider the case from his standpoint. He stated that, while he was seated there in this position, some one hallooed, "Look out!" that at this time Clinkenbeard's team, driven by a negro, who was holding the plow, was coming up about thirty or forty yards behind him, and Clinkenbeard was walking beside the negro, with a double-barrel shotgun in his hand; that, when appellant looked around, he saw Clinkenbeard with his gun up, in a shooting position, and, before appellant got straightened up, Clinkenbeard shot him in the right side; that he then raised his rifle, but, before he could shoot, Clinkenbeard shot him the second time, causing the rifle to drop just as it went off, so that the ball struck Clinkenbeard in the leg. William Utterback, appellant's son, who rented the land on the other side of the road, had also come out with his team to plow that evening the land he had rented, and had brought a revolver in his pocket. From the disturbance of the teams, William Utterback was brought near Clinkenbeard. He had his revolver in his hand, while Clinkenbeard loaded his gun, but was making no demonstration or effort to use it. After appellant and Clinkenbeard had emptied

their guns, both retired a few steps, broke their guns, and reloaded. As soon as Clinkenbeard reloaded his gun, he leveled it upon William Utterback, and fired both barrels at him, putting out one of his eyes, and inflicting other painful but not serious injuries. When appellant saw Clinkenbeard shooting at his son, he shot at him again, but too late to save his son, the ball, however, striking Clinkenbeard in the shoulder, and inflicting a mortal wound, from which he died shortly afterwards.

On these facts, the court below, after instructing the jury on the right of self-defense, gave the following instruction, qualifying it: "But if the jury believe from the evidence that the deceased had rented of Jack Sharp the land lying north of the old road, and as shown by the plat in evidence before the jury, and that said Sharp had put deceased in possession thereof, the deceased had the right to plow all of said land, including the new road mentioned and described in the evidence; and if the jury shall further believe from the evidence that the defendant, Hezekiah Utterback, went upon said rented premises armed with a gun, with the intention of killing said Clinkenbeard, or of doing him great bodily harm in case deceased plowed up said road, then such entry upon said land by the defendant was unlawful and forcible, and said defendant was in fact and in law a felonious trespasser, and the deceased had the right to repel such forcible entry on his premises; and if he, the deceased, believed, and had reasonable grounds to believe, that he was in danger of losing his life or the infliction of great bodily harm at the hands of the defendant, he had the right to stand his ground and kill the defendant; and if the jury shall believe from the evidence that by reason of a forcible entry, as aforesaid, by the defendant, a shooting took place be-

tween the defendant and the said Clinkenbeard, and that the defendant, in said shooting, did shoot and kill the said Clinkenbeard, then the defendant can not claim the right to nor rely on the defense of self-defense, and the jury ought to so find; and the jury is further instructed that if they believe from the evidence that, by reason of a forcible entry aforesaid, the shooting between the defendant and the deceased took place, and that the son, William Utterback, being present, did draw his pistol, and the deceased believed, and had reasonable grounds to believe, that he was in danger of losing his life or the infliction of great bodily harm at the hands of said William Utterback, that the deceased had the right to shoot, and, if necessary, to kill, the said William Utterback; and if, in attempting to do so, the defendant, Hezekiah Utterback, shot and killed the deceased, then the defendant, Hezekiah Utterback, can not claim the right to nor rely on the defense of defending his son, William, and the jury ought to so find."

If Clinkenbeard had not died of his wounds, and had been on trial for shooting appellant when he was sitting down quietly, with his back to him, and unconscious of his approach at the time that Clinkenbeard raised his gun to shoot him, it would hardly be contended that Clinkenbeard would have been entitled to this instruction as the law of self-defense. If it could not be given in favor of Clinkenbeard if on trial, it should not have been given against appellant. The evidence for appellant conduced to show that Sharp had granted him the right to the road, and that he had long held possession of it, with Sharp's consent. If the instruction given was sound, then, on the same principle, appellant was entitled to an instruction that if Clinkenbeard came upon his road while he was in

possession of it, and made said entry armed with a gun, with the intention of killing him or doing him great bodily harm in case he did not allow the road plowed, then Clinkenbeard was a felonious trespasser, and the deceased had the right to repel such forcible entry on his premises, etc.

The facts show beyond doubt that Clinkenbeard and appellant each thought himself entitled to the disputed land, and each regarded the other as a trespasser. They could not settle this dispute by the arbitrament of arms. Life can not be taken to prevent a trespass; and, on a trial for homicide, the guilt or innocence of the defendant does not depend upon whether he was right or wrong in the controversy about the land. Life, in cases like this, can only be taken in self-defense or in the necessary defense of others. The instruction quoted seems to have been based upon the case of Baker v. Com., 93 Ky., 304, [19 S. W., 975]. But in that case, the deceased and his party having undertaken to drive the accused from his own premises, he took refuge in his stable, and, as deceased approached, he called to him to stop. Deceased then started forward, grabbing a gun from one of his friends, and, as he advanced, was shot by appellant. The purpose of the attack was to kill accused or run him off. On these facts, the court only held that the accused was not bound to retreat, but might take such steps as he had reasonable grounds to believe necessary to protect his life or prevent great bodily harm at the hands of his assailant.

In Estep v. Com., 86 Ky., 39, [9 Am. St. R., 260; 4 S. W., 820], where the deceased was a trespasser in the accused's dwelling house, and the wife of the accused had been assailed, and was being beaten on the floor, this court went

no further than to say that the accused had a right to
stand his ground, and take such steps as were apparently
necessary to protect himself and his family from the then
impending danger. The same principles were announc-
ed in Eversole v. Com., 95 Ky., 623, [26 S. W., 816]. In
1 Wharton on Criminal Law, section 500, this is said:
"We may here repeat that it is murder for A to deliber-
ately kill B for merely trespassing on A's property, A
at the time knowing that only a trespass was 'intended.
The same rule applies *mutatis mutandis* to the vindication
of the right to personal property. If the killing of the
trespasser in either case take place in the passion and
heat of blood, the killing is manslaughter; but, unless it
be in resisting robbery, it is not justifiable. The reason is
that, in the given cases of trespasses, the killing was un-
necessary, the party killing knowing that only a trespass,
or, at the most, a trivial larceny, was intended."

In 1 Bishop Criminal Law, sections 857, 858, the law
is thus stated: "The general doctrine is that while a man
may use 'all reasonable and necessary force to defend
his real or personal estate, of which he is in the actual
possession, against another who comes to dispossess him
without right,' he can not innocently carry this defense
to the extent of killing the aggressor. If no other way is
open he must yield and get himself righted by resort to law.

But the general doctrine as to the defense of
property is not applicable to the defense of what
is termed the 'castle.' In the early times our fore-
fathers were compelled to protect themselves in their
habitation by converting them into holds of defense; and,
so the dwelling house was called a 'castle'. And thence
has grown up the familiar doctrine that, while a man keeps
the doors of his house closed, no other has the right to

Utterback v. Commonwealth.

break in under any circumstances, except in particular cases, where it becomes lawful for the purpose of making an arrest of the occupant, or the like,—cases which it is not within our present line of discussion to consider. From this doctrine is derived another, namely, that the person within the house may exercise all needful force to keep the aggressor out, even to the taking of life."

In the case at bar the difficulty occurred over a little strip of land remote from the dwelling house of either party, and neither could legally vindicate his rights as he conceived them to be by a breach of the peace, much less by the taking of human life. The question as to who was in the right about the land is not to be determined here, for neither party had the right to resort to firearms, unless life was then and there in danger, or great bodily harm apprehended. The right of the parties to the land can only be tried in a civil suit between them. The evidence to their respective claims is only admissible in this case to put the jury in the situation of the parties, so that the jurors may better judge as to their motives, and determine, where the evidence is conflicting, more intelligently as to their actions.

We see no error in the other instructions of the court, except that on another trial it will be better to modify No. 1 so as to read, "Not in the necessary or apparently necessary defense of himself or his son, William Utterback," in place of the words. "Not in his necessary self-defense," at present in the instruction.

There was evidence by the Commonwealth tending to show that appellant and Clinkenbeard both began shooting simultaneously when Clinkenbeard appeared, and without either waiting for a demonstration by the other. On this phase of the case, the court should instruct the

jury that if appellant commenced the difficulty by making the first demonstration to shoot, or if both appellant and deceased went on the premises armed, determined on a conflict, and, on meeting, the conflict was by mutual consent, then, in either event, appellant could not rely on the right of self-defense, unless he in good faith withdrew from the conflict, and only re-engaged in it afterwards in defense of his son; and, if he so fired the fatal shot in defense of his son, he is excusable or not, according as the son would be innocent or guilty had he then fired this shot himself in his own defense.

This instruction should be substituted for that quoted on a retrial of the case. The evidence offered by the appellant to show his right to the road in the bottom, and how and on what terms that was exchanged for the road on the hill, why the new road or turnout was made, how long it had been used, and the character of its use, and that Sharp consented to this use of the new road, should have been allowed to go to the jury. It served to show the good faith of the defendant, and, as the punishment is largely in the discretion of the jury, they should be placed, as far as possible, in the situation of the parties. The minutiae of the evidence on these points need not be stated, but only the general facts.

In the exclusion of this evidence and the giving of the instruction referred to, the substantial rights of the appellant were prejudiced. The proof shows that he was a quiet, peaceable man, of good character, and that the deceased was a dangerous and violent man, who was by no means a novice in such encounters. The instruction quoted would be understood by an ordinary jury as equivalent to a peremptory instruction to find the defendant guilty. From the verdict which the jury re-

turned, it would seem that they believed appellant's version of the affair, and if so, the rejected evidence might have been of great value in their minds on several of the disputed questions in the case.

The judgment of the court below is therefore reversed, and the cause remanded, with directions to grant appellant a new trial, and for further proceedings consistent with this opinion.

---

CASE 93—MOTION FOR RETAXATION OF COSTS—FEB. 18.