# DECISIONS

OF THE

# Court of Appeals of Kentucky

## APRIL TERM 1907.

Case 1—PROSECUTION AGAINST ROBERT B. NEELEY FOR HOMICIDE.—May 15.

## Neeley v. Commonwealth.

Appeal from Powell Circuit Court.

J. M. BENTON, Circuit Judge.

Defendant convicted of voluntary manslaughter and appeals. Reversed.

1. Warrant of Arrest—Special Bailiff—Appointment by Justice of the Peace—Authority Conferred—A special bailiff may be appointed to execute a process in a civil action, but there is no statute authorizing a justice of the peace to appoint a special bailiff to execute a warrant of arrest under the Criminal Code, and such appointment confers no authority upon the person attempting to execute such a warrant.

2. Same—Homicide—Evidence of Warrant—Endorsement—On the trial of N. jointly indicted with J. for the unlawful killing of S., while acting under a warrant from a justice of the peace appointing J. as special bailiff to arrest S., neither the warrant nor the indorsement on it conferred any authority upon J. to arrest S., and the evidence as to the issuing of the warrant, the endorsement on it and what was done under it, may only be considered in so far as it may in connection with the other facts proved throw light on the situation of the parties and the motives prompting their conduct.

3. Assaulting Deceased—Self-defense—Assault by Deceased—Apparent danger—Rights of Parties—If there was an assault on S. at his house by J. and N. with intent to take his life or do him some great bodily harm, and S. believed and had reasonable grounds to believe that it was necessary to use a deadly weapon' to protect himself from death or great bodily harm, then he had a right to use such force as reasonably appeared to him to be necessary to protect himself from such danger and in this event the person or persons so making the assault can not rely on self-defense. But if J. made the assault on the house and did not intend to kill S. or do him great bodily harm, but only intended to arrest him in good faith under the warrant, and S. had not reasonable grounds to believe he was in danger of death or great bodily harm, then S. had no right to shoot J. merely to prevent his being arrested, and if he did so shoot at J. and J. believed, and had reasonable grounds to believe he was then and there in immediate danger of death or great bodily harm at the hands of S. and that it was necessary to shoot S. in order to avert such danger, either real or apparent, then J., if he so shot and killed S. was excusable on the ground of self-defense, and the defendant, N., who accompanied J. should be acquitted.

4. Unarmed Defendant—Innocent Motives—If the defendant, N., was unarmed and did not shoot S. or take any part in the shooting. of him and accompanied J. innocently and for no improper purpose to harm S. or any of his family, he should be acquitted.

BYRD & JOUETT, for appellant.

N. B. HAYS, Atty. Gen. for Commonwealth.

(No briefs in the record.)

OPINION BY CHIEF JUSTICE HOBSON—Reversing.

James Smith was a tenant of Robert Neeley, living on his farm not far from Neeley's house. Neeley had separated from his wife, and Smith's wife had been cooking for Neeley when he had company, and doing other housework for him. He missed some things from his house and accused her of stealing them. After this he received information of threats made against him by Smith's son, and saw the son about his premises acting peculiarly. He then went to a magistrate and took out a peace warrant for James Smith and

his son.  There was no constable in the district, and the magistrate by his written indorsement on the warrant authorized Alex Jackson to execute it. Jackson arrested the son, but he afterwards escaped from the guard in whose custody Jackson had placed him. James Smith was absent from the county at that time.  He returned on the following Saturday, and Saturday evening Jackson went to his house for the purpose of arresting him.  As he went he passed by where Neeley was feeding his hogs, and at his request Neeley went with him, although they both say that Neeley did not go up to the house, but stayed down at the road while Jackson went up to the house. The Smiths were eating supper. Jackson knocked at the door and said, ''Come out here, Uncle Jim,'' telling him that he wanted to arrest him under the warrant and that he did not think there was much in it. Smith said he would not come out that night. Jackson pushed on the door, which was made of clapboards, and either from the pushing or from Jackson's striking it some of the boards fell off.  There is some conflict here as to what occurred. Mrs. Smith and her little daughter testify that there were two shots fired from the outside, one from the front and one from the corner of the house.  The defendants testify that Smith, when the boards fell off, shot at Jackson from the house, and that Jackson returned the fire. They both say Neeley was unarmed and was down at the road.  Smith was shot, and soon after the shooting Neeley came in with a handkerchief in his hand.  He stayed with Smith until he died.  Jackson offered to go for a doctor; but it was 35 miles to the county seat, and they concluded that Smith would die before the doctor reached there. Jackson testified that he shot Smith, and shot him to prevent Smith from killing him with the gun which he had.  Neeley was indicted jointly with Jackson for the homicide.  He was found guilty of voluntary manslaughter, and his punishment fixed at 21 years in the penitentiary.

A special bailiff may be appointed to execute a process in a civil action (Civ. Code Prac. Sec. 668-701), but there is no statute authorizing a justice of the peace to appoint a special bailiff to execute a warrant of arrest issued under the criminal code. Proceedings for requiring security to keep the peace are governed by sections 382-393, Cr. Code Prac. By section 383 a warrant of arrest may be directed to a peace officer, and by section 26 only peace officers are authorized to execute a warrant. The justice of the peace, therefore, had no authority to authorize Jackson to execute the warrant, and Jackson had no authority to arrest Smith under the warrant. But, notwithstanding this, Smith had no right to kill Jackson or do him great bodily harm to prevent a mere trespass. The court instructed the jury as to self-defense as follows: "Although the jury may believe from the evidence beyond a reasonable doubt that the defendant, Neeley, either willfully shot and killed James Smith, or that he was willfully present and aided and abetted Alex. Jackson in such shooting and killing, as explained in the first instruction, yet if the jury further believed from the evidence that Neeley and Jackson, or the one of them who shot and killed Smith, if they or either of them did so, had reasonable grounds to believe and did believe that they or one of them was then and there in immediate danger of death or great bodily harm at the hands of said Smith, and that it reasonably appeared to the said Neeley and Jackson, or to the one who shot said Smith, if they or either of them did so, to be necessary to shoot said Smith in order to avert such danger of death or great bodily harm, either real or to the said Neeley and Jackson, or to the one of them who did said shooting, if they or either of them did so, apparent, the jury should find the defendant not guilty on the ground of self-defense or defense of another, or apparent necessity; but this instruction is given sub-

ject to this modification: Neither the warrant introduced in evidence nor the indorsement on it conferred any authority upon Alex. Jackson to arrest James Smith, and the evidence with reference to said warrant, the issuance of it, and the indorsement on it was permitted to go to the jury for the purpose of explaining, if the jury believe that it does explain, the object and purpose of the defendants Neeley and Jackson, or either of them, in going to the home of the said Smith on the occasion when he was killed; and if the jury believe from the evidence beyond a reasonable doubt that, on the occasion of the shooting and killing of said James Smith, Alex Jackson and the defendant, Neeley, or either of them, had gone to the home of said Smith, and was forcibly attempting to break and enter the dwelling house of said Smith, and to forcibly arrest said Smith to the extent of killing him or inflicting great bodily harm upon him in order to accomplish such arrest, and that said Smith in resisting such attempts on the part of said Neeley and Jackson, or either of them, if any such attempts were made by them or either of them, used no more force than was reasonably necessary to prevent such forcible breaking and entering of his dwelling house and to prevent the said Neeley and Jackson, or one of them, from going to the extent above indicated to accomplish his arrest; and if the jury further believe from the evidence beyond a reasonable doubt that the danger, if any, to said Neeley and Jackson, or to the one of them who shot Smith, if they or either of them did so, real or apparent, was brought about by them in the manner indicated in this instruction, the jury should not acquit the defendant upon the ground of self-defense or defense of another or apparent necessity.'' Neither the warrant introduced in evidence nor the indorsement on it conferred any authority upon Alex Jackson to arrest James Smith, and the evidence as

to the issuing of the warrant, the indorsement on it, and what was done under it, may only be considered in so far as it may, in connection with the other facts proved, throw light on the situation of the parties and the motives prompting their conduct. If there was an assault on Smith's house by Jackson or Neeley with intent to take his life or do him great bodily harm, and Smith believed, and had reasonable grounds to believe, that it was necessary to use a deadly weapon to protect himself from death or great bodily harm, then he had a right to use such force as reasonably appeared to him to be necessary to protect himself from such danger, and in this event the person or persons so making the assault cannot rely on self-defense. Wright v. Commonwealth, 85 Ky., 123, 8 Ky. L. R., 718, 2 S. W. 904; Esten v. Commonwealth, 86 Ky., 39, 9 Ky. L. R., 278; 4 S. W., 820, 9 Am. St. Rep., 260; Sparks v. Commonwealth, 89 Ky., 644, 12 Ky. L. R., 402; 20 S. W. 167; Saylor v. Commonwealth, 97 Ky., 184, 17 Ky. L. R. 100; 30 S. W., 390; Ogles v. Commonwealth, 11 S. W., 816, 11 Ky. Law Rep., 289. But if Jackson made the assault on the house, and did not intend to kill Smith or do him great bodily harm, but only intended to arrest him in good faith under the warrant, and Smith had not reasonable grounds to believe he was in danger of death or great bodily harm, then Smith had no right to shoot Jackson merely to prevent his being arrested; and if he did so shoot at Jackson and Jackson believed, and had reasonable grounds to believe, he was then and there in immediate danger of death or great bodily harm at the hands of Smith, and that it was necessary to shoot Smith in order to avert such danger, either real or apparent, then Jackson if he so shot and killed Smith, was excusable on the ground of self-defense, and the defendant, Neeley, should be acquitted. Kendall v. Commonwealth, 19 S. W. 173, 14 Ky. Law Rep. 15; Common-

wealth v. Bullock, 67 S. W., 992, 24 Ky. Law Rep., 79; Carrol v. State, 24 Ala., 36; State v. Patterson, 12 Am. Rep., 210; Rafferty v. People, 18 Am. Rep., 601; Noles v. State, 62 Am. Dec., 711.

In lieu of the instruction quoted the court should have instructed the jury as above indicated. The difficulty with the instruction of the court is that it does not inform the jury as to the amount of force which Smith might lawfully have used, nor does it define to them the circumstances under which Jackson might act in his self-defense. If the proof for the defendant is true, then Neeley was down at the road, and had nothing to do with the shooting. He was unarmed, and from the defendant's version of the matter was in no way connected with the homicide. In view of the evidence for the defendant, the court on another trial will also instruct the jury that if the defendant Neeley did not shoot Smith, or take any part in the shooting of him, and accompanied Jackson innocently and for no improper purpose to harm Smith or any of his family, they should acquit him.

Judgment reversed, and cause remanded for a new trial and further proceedings consistent herewith.