## Krone v. Commonwealth.

(Decided Oct. 2, 1936.)

HUBERT MEREDITH for appellant.

B. M. VINCENT, Attorney General, and ROSCOE VINCENT, Assistant Attorney General, for appellee.

Opinion of the Court by Morris, Commissioner—Affirming.

In April 1935, appellant shot and wounded Ernest Radford, for which offense, denounced by section 1166 Ky. Stats., he was indicted and upon trial found guilty; the jury fixing his penalty at two years' imprisonment. After overruling a motion for a new trial, judgment was entered in accord with the jury's return, and from it this appeal is presented.

Krone does not deny that he shot and wounded Radford, but insists that the shooting was done in self-defense, and at a time when Radford was forcibly intruding himself into his home.

Radford's recital of the shooting was to the effect that Krone, prior thereto and at that time, was operating a sort of dance hall where sandwiches and beer were sold. A sharp issue is made as to whether or not appellant had ceased to operate a public house and was then living quietly with his family at his home.

On the night in question Radford had been to another dance hall near Central City. He and his party, one other man and two women, left in an automobile to go to Krone's place, as Radford says, to get some sandwiches. His version is that they arrived at this place, drove the machine into a driveway near the house, and when they had parked the machine Krone came out and told him and his friends that they were not wanted and directed them to leave. Radford asked Krone what he was sore about, and said that Krone began cursing him and he asked him to cease, but that Krone "just kept on and I got out of the car and hit him, and he went in and came back out of the house. He didn't offer to fight me, and I never thought about him shooting me, and when I kinder turned around he shot me." The shot took effect in the chest; the bullet, a No. 32, going into the left lung.

Radford insists that he had been to Krone's place prior to this time; danced, bought sandwiches and beer; and that Krone's place was known as a public one. He says that he had been there about three weeks or a month prior to this night. He fixes the time of the shooting at "about midnight." Jeff Humphrey and Grace Whitler, Radford's guests on the occasion, corroborate his testimony.

Krone tells his side of the case in such a way as to raise a sharp issue. He says that on the night in question he and his wife, a man named Dockery, and another named Baize, were at his home playing cards; that about 3 o'clock in the morning his attention was directed to some one knocking on the door; that they broke the door in and got inside the house, and "I asked them to go away and not to come in. Radford came on in and I told him to go away—he wasn't wanted there. I had asked him to stay away before." He admits that he shot Radford about this time, but says that Radford was "pulling his gun." Asked the direct question as to why he shot Radford, he replied: "Well, because he had been cursing me out there; said he was going to rob me and beat me up." He says that Radford had been coming to his place before that time, but that he had warned him to stay away. On cross-examination Krone, admitting that he had formerly operated the place as a public dance hall, insists that it had been nine months since it was so operated, and that it was his private residence at the time of the shooting; that his license to sell beer had long since expired; that Radford and his party had been there several times before and danced, but he does not fix the times. He denies that he went outside of the house, or that Radford knocked him down. One of the persons present at Krone's home on that night corroborates his evidence.

The proof also showed, by affidavit of absent witnesses, that Radford and his party were seen just a short time prior to the shooting at a roadhouse called Hollywood, near Central City; that they were drunk and boisterous; that Radford was heard to say to others of his party, "We will now go to the home of John Krone and tear it up," and they got into a car and left.

In rebuttal Radford denied that he kicked upon or broke the door open, or that he was in the house; denied that he had a pistol, or reached for one, or made any threat against Krone. He also denied that he was drunk or that had he said he was going to Krone's house and tear it up. Humphrey and Grace Whitler in rebuttal, corroborated Radford.

Upon this irreconcilable proof the court gave the jury instructions (1) in the language of the statute (section 1166), (2) on shooting in sudden affray or in

heat and passion, (3) self-defense, (4) the usual and approved reasonable doubt instruction, and (5) defining appellant's rights to protect himself and his home, if he believed Radford was intruding.

Five or six grounds for a new trial were set out in support of the motion and included in the bill of exceptions, but counsel for appellant only urges in his brief the contention that instructions 1 and 5 were erroneously given.

As indicated above, instruction No. 1 was given in the language of section 1166, Ky. Stats., which condemns unlawful, willful, and malicious shooting and wounding, but so that death does not ensue from such shooting.

Counsel argues, first, that in the instruction given (No. 1) the penalty was fixed at confinement from one to five years, whereas the statute in effect at the time the offense was committed provided a penalty of two to twenty-one years. It is true that prior to 1934 the penalty under section 1166, Ky. Stats., was fixed as claimed. This section was amended in 1934 (chapter 47 Acts 1934) so as to raise the penalty from two to twenty-one years. Since the jury administered a penalty of only two years, it is difficult to see how the court's failure to give an instruction carrying the penalty under the amended statute, worked any prejudicial error as against appellant. Under the instruction given, he had opportunity to escape with a one-year sentence, and likewise to avoid all possibility of a verdict for a longer period than five years. No sufficient reason is advanced why this technical error constituted prejudicial error against appellant, and we can conceive of none.

Referring again to instruction No. 1, it is contended by appellant that neither version of the shooting authorized the giving of this instruction. This contention is not meritorious. Under repeated decisions of this court, the trial court is required to give the whole law of the case, and here, undoubtedly, the instruction was properly given. It is insisted that since there was no malice shown, the jury should have been instructed only as to shooting and wounding in sudden affray. It is shown by Krone's testimony that he had theretofore

ordered Radford to stay away from the place. Why, the evidence does not show. When Radford, according to his testimony, appeared on the scene and Krone came out and ordered him away, the first inquiry was, "What are you sore about?" And Krone, when asked, "Why did you shoot him?" replied, "Well, because he had been cursing me out there; said he was going to rob and beat me up." We readily conclude that there was ample proof from which the jury could have inferred malice, and the court evidently being of that belief correctly gave instruction No. 1.

Appellant finally contends that the court erred in failing to give the jury an instruction upon the right and circumstances under which the appellant might eject Radford from his premises. He insists that since Radford was forcibly intruding himself into Krone's private dwelling, he had the unquestioned right to use such force as was necessary to eject Radford, and in so doing to oppose force with force, even to the taking of Radford's life. In the abstract this is a fair statement of the rule. Newcome v. Russell, 133 Ky. 29, 117 S. W. 305, 22 L. R. A. (N. S.) 724; Watson v. Com., 132 Ky. 46, 116 S. W. 287; Wright v. Com., 85 Ky. 123, 2 S. W. 904, 8 Ky. Law Rep. 718; Estep v. Com., 86 Ky. 39, 4 S. W. 820, 9 Ky. Law Rep. 278, 9 Am. St. Rep. 260; Leach v. Com., 129 Ky. 497, 112 S. W. 595, 33 Ky. Law Rep. 1016.

However, counsel argues from the standpoint of the testimony of Radford as to what occurred outside, since he says that Radford had been warned to stay away, and "when he got out of his car, advanced upon appellant and viciously assaulted him; appellant shot him in an effort to repel the assault, which was made upon his person and his home, and we contend that he had the unquestioned right to shoot him under these circumstances."

If appellant's contention is sound, based on the facts as detailed by Radford, then Radford was not an intruder into the home, but was a mere trespasser upon the premises, since there is no showing from that proof that Radford was then trying to enter the home.

It is not shown here whether the place where Radford claims he was shot was on Krone's land, or in a

driveway, a part of a public road; again the court gave an instruction on self-defense in approved form. Accepting the theory of the appellant, as appears from his evidence, that the shooting occurred in the house and not on the roadway as contended by Radford, it seems to us that the instruction given on defense of the home, while not precisely phrased was very favorable to appellant. By that instruction the court told the jury that if they should believe from the evidence that Krone shot Radford at a time when Radford was forcibly breaking and entering defendant's home, and thereby committing a felony, then the defendant had the right under the law to shoot him to prevent his doing so.

In view of the fact that counsel contends that when a man's home is invaded the owner may resort to such means as in the exercise of a reasonable judgment may be necessary to expel the intruder, this instruction was favorable to appellant, because if, according to his version, Radford was breaking into his home, he was not required by the instruction to exercise judgment in the means necessary to expel him, but had the right to shoot him. The instruction as given was more favorable to him than the one advocated by counsel.

The jury had the right to believe Radford's version, which if true did not justify the shooting. On the other hand, they had the right to accept or reject Krone's version. The court cannot substitute its beliefs for those of the jury which tried the case. Perceiving no error, we are compelled to affirm the judgment below.

Judgment affirmed.