### Robinson v. Commonwealth.

October 21, 1949.

Draffen & Dean for appellant.

A. E. Funk, Attorney General, and Zeb A. Stewart, Assistant Attorney General, for appellee.

JUDGE REES—Affirming.

The appellant, Gip Robinson, has been convicted of the crime of manslaughter and sentenced to the penitentiary for a term of 21 years. The sole ground urged for reversal of the judgment is the court's failure to instruct the jury on appellant's right to defend his home and family. A self-defense instruction was given.

Appellant shot and killed Shanklin Robinson, who was no relation and whom he had never seen prior to the night of the tragedy. Shanklin Robinson, accompanied by Jerry Cole, left Lexington in a pickup truck about 6:30 p. m., December 27, 1947, intending to go to Washington County to visit Robinson's uncle. They stopped in Versailles and purchased a bottle of whisky. As they passed through Lawrenceburg they picked up Truman Barnett, who was "hitchhiking" to his home a few miles west of Lawrenceburg. Neither Robinson nor Cole knew Barnett. They drove west on U. S. Highway 62 to its intersection with Highway 53, and then on 53 to a point near the home of appellant, where Robinson lost control of the truck which ran off the road and turned over. Robinson was thrown out of the truck, but Cole and Barnett were pinned in or under the truck. The wreck occurred about 100 feet from appellant's home. Appellant heard the crash, and went to the scene of the accident. This was about 10 p. m. If appellant was entitled to the instruction which he now insists should have been given, his right must be found in his own testimony. He testified that when he arrived at the scene of the accident Truman Barnett was pinned under the truck and Shanklin Robinson was standing on top of the bank at the edge of the highway. He asked Shanklin Robinson to assist him in extricating Barnett, and Robinson cursed him. After Barnett had been extricated, Shanklin Robinson came down the bank and struck appellant several times. Appellant returned to his home, reported that he had

been in a fight with a stranger, and soon after entering the house heard his wife, who was standing near a front window, say: "Lord, Gip, don't let him come in the house." Appellant got a shotgun and shells, left the house through the front door, and walked to a gap in the yard fence, a distance of 31 feet. As to what then occurred, appellant testified: "I saw a boy stepping up on the shoulder of the road. He never said a word, stood there a minute it seemed like a minute or two minutes, I wouldn't say, for I am just guessing, he made another step in the road, he didn't turn towards the bridge, I said, 'Hey, boy, you had better go some other way tonight, you can't come in here and can't get hold of me.' He never made me any answer whatever as I heard. I called on him again, I said, 'You had better go some other way you can't get hold of me tonight, you can't come in here.' He muttered something. I am a little hard of hearing I couldn't understand the words he said, he muttered something I didn't understand. I called on him again to go some other way. He said, 'God damn' or 'damn,' I wouldn't say which it was that time, 'if you don't get me I will get you,' threw his right hand in his pocket. I eased down the fence behind it, the gap was down, to keep the fence between me and him, I didn't want the man hold of me any more. I pulled the trigger when he told me that."

The load of shot entered the side of Shanklin Robinson's neck and tore a hole through his neck about the size of a silver dollar, indicating the shot was fired at close range. Appellant stated that the muzzle of the gun was 8 or 10 feet from the deceased when the shot was fired. The road referred to in the testimony is 12 feet wide. According to appellant, the deceased was about 40 feet from the house and outside of appellant's yard when he was killed, but the evidence for the Commonwealth places him further down the road near the end of the bridge at the intersection of Punching Creek Road and highway 53, or more than 100 feet from the house.

Jerry Cole, who extricated himself from the truck and then assisted appellant in extricating Barnett, testified that he heard appellant ask Shanklin Robinson, who was lying on the edge of the creek bank, to assist, and that the latter replied "he couldn't get over there;

that his back was broken." Shanklin Robinson later got up and assisted in lifting the truck off of Barnett's leg. Appellant then invited the three men to his home, and Barnett, who was only slightly injured, went. The other three remained at the scene of the accident for a few minutes, and appellant then started to his home. Cole testified that appellant staggered and appeared to be drunk. He saw no fighting between appellant and the deceased. Truman Barnett, a witness for appellant, testified "they was fussing when I left."

It is obvious from the evidence that this killing resulted from very slight provocation. All of the parties present were more or less under the influence of liquor, and appellant apparently became incensed because the deceased struck him or, as appellant told one witness, because the deceased "called him a bad name." There was no evidence that deceased was making an assault on appellant's home or was threatening any member of his family at the time of the shooting. As was said in Watts v. Commonwealth, 301 Ky. 351, 192 S. W. 2d 107, 108: "While it is true that the right to act in defense of one's home generally exists in case of attack or attempted attack with firearms where personal violence is threatened to a person in the home (Hendrickson v. Commonwealth, 232 Ky. 691, 24 S. W. 2d 564; Burks v. Commonwealth, 254 Ky. 193, 71 S. W. 2d 418), this rule does not apply where there is no showing that the intruder was attempting to enter the home at the time of the shooting. Krone v. Commonwealth, 265 Ky. 389, 96 S. W. 2d 1052."

Appellant relies upon Poe v. Commonwealth, 244 Ky. 649, 51 S. W. 2d 937, but that case is distinguishable on the facts. There, the deceased went to the accused's home, engaged in an altercation with the accused, and cursed and abused the accused's wife. When ordered to leave the premises he walked to his automobile parked near by, apparently took therefrom a gun, and started back toward the accused's house. During all of this time he continued to curse the latter's wife. In the present case, the most that can be said is that the deceased made a hostile demonstration toward appellant, though no weapon of any kind was found on his body. We find no evidence that appellant was acting in defense of his home and family, and the court's failure to give an in-

struction embodying that defense was not error. Gadd v. Commonwealth, 305 Ky. 318, 204 S. W. 2d 215; Engle v. Commonwealth, 258 Ky. 118, 79 S. W. 2d 417; Commonwealth v. Girkey, 240 Ky. 382, 42 S. W. 2d 513.

The judgment is affirmed.