CASE 121—PROSECUTION AGAINST WILLIAM SHEPHERD, FOR MURDER.—FEB. 24.

## Shepherd v. Commonwealth.

| 119 | 931 |
| f124 | 654 |

| 119 | 931 |
| f129 | 487 |
| 129 | 708 |

APPEAL FROM LETCHER CIRCUIT COURT—M. J. MOSS, CIRCUIT JUDGE.

DEFENDANT CONVICTED AND APPEALS. REVERSED.

HOMICIDE—MITIGATING CIRCUMSTANCES—ADULTERY—EVIDENCE—PRIVELEGED COMMUNICATIONS—TRIAL—ARGUMENT TO JURY.

1. On a trial for homicide, evidence that defendant had committed other crimes, that he had possibly been guilty of adultery, that he had shot another man, or that he had said that deceased was the third man that he had shot, was improperly admitted.

2. Whether the fact that deceased had estranged the affections of defendant's wife, had debauched her person, and had threatened defendant's life if he interfered with deceased's continuance of his illicit relations, created in defendant an emotional insanity, so as for the time to dethrone his reason, or whether it merely reduced the homicide to manslaughter, was a question for the jury.

3. On a trial for homicide, testimony that defendant's wife told him immediately before the shooting that deceased, who was occupying illicit relations towards her, had threatened defendant's life, and would kill him rather than let his wife return with him, is competent, and is not within the prohibition of Civil Code, sec. 606, declaring the wife incompetent to testify to any confidential communications made during marriage.

4. On a trial for homicide, defendant moved for a continuance on the ground of absence of witnesses. The Commonwealth consented that the affidavit should be read, under the provisions of the Code, whereupon the continuance was denied, and the affidavit admitted as evidence. In closing to the jury, the Commonwealth's attorney stated that the supposed testimony of the absent witnesses was not in fact their sworn testimony, but was merely an affidavit filed on defendant's behalf, and argued, or at least invited the inference, that the testimony was not to be received by the jury as evidence. HELD, that the argument was improper, and defendant's objection thereto should have been sustained, and the jury should have been properly admonished.

B. B. GOLDEN, ATTORNEY FOR APPELLANT.
DAVID HAYS, D. D. FIELD & SON AND J. G. FORRESTER, OF COUNSEL.

Among the many errors committed by the court on the trial of this case, we desire to call special attention to some of them.

1. The court permitted the Commonwealth to prove that after the killing of deceased and while appellant was being taken to jail he said: "This makes three I have knocked," and at another time, "Old Shep took it mighty cool."

2. Also the Commonwealth was allowed to prove the character of appellant's wife and her conduct with other men, also that there had been some trifling difficulties between appellant and his wife, and this testimony was permitted to go into the minutest details.

3. Defendant was not permitted to prove why he returned to his home after he had left to go and provide a new home for his wife, so as to show that he did not return to seek a difficulty with deceased, and that he had no thought of finding him with her.

4. Defendant was not permitted to prove that just before the killing his wife had told him that deceased was going to kill him, which we insist was a part of the res gestae.

5. Defendant was not permitted to prove that while separated from his wife, who had been induced to leave him by deceased, that he was in such a state of mental derangement that he was heard to say, "his trouble was such that he did not care whether he lived or died."

6. He was not allowed to prove by a witness that deceased told said witness about sleeping with appellant's wife the night before he (witness) advised deceased not to go to her father's house on the day of the killing.

.Shepherd v. Commonwealth.

7. The court permitted the Commonwealth to prove that deceased was a hardworking man.

8. The attorney for the Commonwealth was allowed to state in his closing argument to the jury, in speaking of the affidavit which contained the testimony of appellant's absent witnesses, which was his principal evidence, and said, in effect, that it was not testimony, to all of which errors, exceptions were saved at the time.

N. B. HAYS, ATTORNEY GENERAL, AND C. H. MORRIS. FOR APPELLEE.

1. We insist that the proof was totally insufficient to convince the jury that appellant was insane at the time of the killing.

2. The statements made by defendant when he was being conveyed to the jail, "This makes three I have knocked," and "Old Shep took it mighty cool," were competent evidence in view of the fact that there was no denial of the killing.

3. We submit it was competent to prove the character and conduct of appellant's wife with other men, and that defendant knew of such conduct before he married her; in order to disprove the theory that appellant was driven to insanity at the time of the killing by seeing deceased with her and discovering their unlawful intimacy.

The attorney for the Commonwealth referred to the affidavit for a continuance only by saying that it was the affidavit of only one witness, Martin Shepherd, which was true.

On the whole case we insist that the defendant has had a fair trial, that he simply carried into execution a deliberate and premeditated act, coolly and deliberately, as he himself boasted, and the verdict is fuly sustained by the evidence.

OPINION OF THE COURT BY JUDGE O'REAR—REVERSING.

Appellant was convicted of the charge of murder, committed upon Riley Webb. The defense was emotional insanity, and justifiable homicide under an apparent necessity. Appellant and his wife had become estranged and had temporarily separated about two years before the killing of Webb. Appellant claims that the separation was because of Webb's interference with the domestic relations of appellant and his wife. Just before the killing, appellant and his wife had agreed to be reconciled and to resume the married relation.

For that purpose, appellant visited her at her father's home in Letcher county. Past offenses were condoned, and appellant started to his home, in Leslie county, to prepare for taking his wife there some days later. He was turned back, however, and returning somewhat unexpectedly, found his wife and Webb in company, from which it was reasonably apparent, and proved to be a fact, that they had again been guilty of adultery. The next morning appellant was talking to his wife at her father's, when Webb came to the house. Appellant claims that his wife told him that Webb had threatened his life, rather than that she should leave with him. Incensed at the continued provocation, as he claims, appellant picked up a rifle and shot Webb fatally. He also claims that, at the moment of the shooting, Webb turned upon him with something in his hand, which appellant thought was a pistol. The verdict of the jury found appellant guilty, and sentenced him to life imprisonment.

Upon the trial there occurred a number of errors for which the judgment must be reversed.

In the first place, it was error for the trial court to have admitted evidence to the jury that appellant had committed other crimes, or that he had been guilty possibly of adulterous acts himself; that he had shot another man, or that he had said that Webb was the third man he had shot. The fact that appellant had shot Webb was not in dispute. His admission of the fact that he had shot him, and that he was the third man that he had shot, could serve no useful or proper purpose in the trial, as it was testified to; appellant having said merely, according to Commonwealth evidence, "He is the third one I have knocked down." Its tendency was rather to lead the minds of the jury away from the consideration of the main facts before them, and tended to prejudice appellant's cause in their minds. For it might be ar-

gued, not unreasonably, that if appellant had shot two men before, and was boasting of it, he was a bad man, and one very likely to have committed a crime of a similar nature in this case. In fixing his punishment, the jury were apt, too, to regulate it somewhat by his previous offenses, whereas the only matter legitimately before the jury was whether appellant had feloniously killed Webb, and, if he had, the proper measure of punishment for that act.

Appellant offered to testify that his wife told him immediately before the shooting that Webb had threatened his life, and would kill him rather than let her return with him. The court excluded this evidence upon the ground, it is said, that it was in the nature of a confidential communication between husband and wife, and, as such, was incompetent as evidence, under the Code. In Arnett v. Commonwealth, 114 Ky., 593, 24 Ky. Law Rep., 1440, 71 S. W., 635, it was held that a dying statement made to the wife of the declarant could be proved against his slayer; that section 606, Civ. Code, "that the wife was incompetent to testify even after the cessation of the marriage relation, to any communication made to her by her husband during marriage," did not apply to criminal prosecutions. With respect to these the common law is in effect in this State, of which Greenleaf on Evidence, section 337, says: "The great object of the rule is to secure domestic happiness by placing the protecting seal of the law upon all confidential communications between husband and wife, and whatever has come to the knowledge of either by the means of the hallowed confidences which that relation inspires can not be afterwards divulged in testimony, even though the other be no longer living." The rule is founded upon the policy of the law, the object of which is to secure domestic happiness by protecting that state in the inviolability of its confidences. What would tend to create

a breach of such confidences is therefore disfavored by the law. But under the circumstances shown in the case at bar, the liberty or life of one accused with a high crime is involved. The main ingredient of his act, aside from the death inflicted by it, is its motive. If the act were inexcusable—done in cold blood, as the saying is, and therefore in malice—the perpetrator became a criminal, subject, under the law, to capital punishment. On the other hand, if the act was excusable, he has, in law, done no wrong, or, if the act was done under such provocation, as to inflame passion beyond control, under the circumstances, the offense is greatly reduced. Instead of being a capital one, it might be punished by a short confinement in the State penitentiary. The State is concerned in eliciting the truth with respect to homicides committed within her borders, and in no sense is it the purpose of the State to convict for a higher degree of crime than is really justifiable by the facts of the case. No other policy of the law can override the State's desire to do justice, and no more, to those charged in her courts with crime. If the fact be that the deceased, Webb, had violated the sanctity of appellant's home, had estranged his wife's affections, had debauched her person, and had threatened appellant's life if he proposed to interfere with deceased's continuance of his illicit relations, forcing his presence upon them for that apparent purpose, human nature is so constituted that the passion of the husband may well be supposed to have been aroused to an uncontrollable extent. Whether it was such as to have created an emotional insanity, so as for the time to dethrone the reason of the outraged husband, or whether it merely reduced the homicide to manslaughter, was a question which, under the circumstances, should have been submitted to the jury. It was not enough, though, to have instructed them appropriately as to the law

Shepherd v. Commonwealth.

ordinarily applicable to murder and manslaughter.' They should have been allowed to consider in connection with the instructions the facts which probably entered into shaping the conduct of the accused on the fatal occasion. If the facts should be, as appellant claims, that his wife had been debauched by the person whom he afterwards slew, and that the debauchee was flaunting his successes in the face of the victimized husband, it would assuredly be competent to prove the fact before the jury, at least in mitigation of the husband's act in taking his life on the spot. The sole question here is whether the husband might show that he got his information from his wife. That he did so get it, for the purposes of this discussion, will be assumed. Having it, it' is for the jury to say to what extent, if at all, it palliated his act. But as shown in this record, that fact could not be brought to the knowledge of the jury, except defendant proved or some one else proved that defendant had got such information. That he got it from his wife could take nothing from the sting of it. Its effect upon his mind and conduct must have been at least the same as, if not, indeed, worse than, if it had been communicated by some third person. If one is informed by his wife that she had been raped, or that a rape had been attempted upon her person, or that she had been grossly insulted and assaulted, pointing out the perpetrator of the act at the time, it would not be unnatural for the husband to act upon that information. To allow it to be proved that he acted drastically, without being permitted to show why, or upon what basis his belief rested, would be applying the rule for the protection of domestic felicity so as to make it hurt instead of help those for whose benefit it was primarily intended. We perceive no good reason for extending the rule invoked so as to exclude the evidence discussed. The court is of opinion

that the evidence should have been admitted, to be weighed by the jury as other facts and circumstances in the case.

Appellant filed an affidavit to procure a continuance on account of the absence of certain witnesses. The Commonwealth consented that the affidavit should be read, under provisions of the Code, as the depositions of the absent witnesses, whereupon appellant's motion for a continuance was overruled, and the affidavit was so admitted. In the concluding argument to the jury, the Commonwealth's attorney said, in evident response to the argument made on behalf of appellant, that the supposed testimony of these absent witnesses was not in fact their sworn testimony, but was merely an affidavit filed on behalf of the defendant. From which it was argued, or at least the inference was necessarily invited, that the testimony of the absent witnesses was not in fact, nor was it to be received by the jury as, their evidence in the case. This was an abuse of privilege by the commonwealth's attorney, and objections of appellant should have been sustain to the argument, and the jury admonished appropriately. The law gives to the defendant in such case the benefit of such statements as the depositions of the absent witnesses. That is the least that he is entitled to, under the guaranty of of the Constitution, and the law affording one charged with crime compulsory process to procure the attendance of witnesses on his behalf at his trial. If the practice should be indulged by the prosecution of discrediting the affidavit by informing the jury that it was not in fact the deposition of the witness, it would be to nullify the provisions of the statute, and to deprive the defendant of a valuable privilege, which the Legislature, in its wisdom, has deemed a necessary one in the proper administration of justice. In condemning a similar remark (Redmond v Commonwealth, 51 S. W., 565, 21

Ky. Law Rep., 331), this court said: "The defendant was entitled to the full benefit of the statements therein as coming from Purcell [the absent witness]. This same practice is indulged in to some extent throughout the State, but should not be permitted by the court."

The other evidence complained of, we think, was admissible. But for the reasons indicated, the case must be remanded for a new trial, under proceedings not inconsistent with this opinion.