CASE 4.—PROSECUTION AGAINST DANIEL BOONE WATSON, JR., FOR MURDER.—February 11.

# Watson v. Commonwealth

Appeal from Lee Circuit Court.

J. P. ADAMS, Circuit Judge.

Defendant convicted, and appeals.—Reversed.

1. Criminal Law—Appeal and Error—Review—Questions of Fact —Conclusiveness of Verdict.—A conviction, based on the testimony of a single witness, will not be disturbed on the ground that the verdict is against the weight of the evidence.
2. Criminal Law—Evidence—Other Offenses.—On a trial for murder in a local option county, it was error to admit evidence as to a sale of liquor by the accused to the deceased and his companion shortly before the homicide and as to a convic-

tion of the accused some time before the homicide for selling liquor without license, where such offenses were not connected with the homicide and neither supplied a motive for it or threw any light upon the question whether it was necessary.

3. Homicide—Trial—Instructions.—The omission to charge upon defendant's right to kill to protect himself and the members of his family from injury and insult was error, where there was evidence that deceased grossly insulted defendant's wife and other members of his family after entering defendant's home and refused to leave when ordered to go.

GOURLEY, REDWINE & GOURLEY, J. M. McDANIEL and B. G. WILLIAMS for appellant.

JAS. BREATHITT, Attorney General, and TOM B. McGREGOR, Assistant Atorney General, for Commonwealth.

(No briefs—record out of office.)

OPINION OF THE COURT BY CHIEF JUSTICE SETTLE— Reversing.

The appellant, Daniel Boone Watson, Jr., shot and killed Daniel Boone Horn at his (appellant's) residence December 25, 1907. Shortly thereafter the grand jury of Lee county found and returned in the circuit court of that county an indictment against appellant for the homicide, in which he was charged with the crime of murder. The trial in the circuit court resulted in a verdict from the jury finding appellant guilty of voluntary manslaughter and fixing his punishment at confinement in the penitentiary two years. Failing to obtain a new trial in the circuit court, he by this appeal seeks a reversal of the judgment of conviction.

The Commonwealth introduced but one witness on the trial, Hiram Horn, a cousin and brother-in-law of deceased, who testified: That a short time before the

homicide he (deceased) and Ves Lynch stopped at appellant's home on their way to Sparks' store and purchased of him a pint and a half of whiskey. From there they went to Sparks' store, about 200 yards distant, where they remained some time, perhaps two hours, and then returned to appellant's house; all being by that time intoxicated. That upon reaching appellant's house Lynch left the witness and deceased and went to his own home. After Lynch left them deceased insisted that witness again go with him into appellant's house, without stating his object in wishing to do so; but witness declined to enter the house with deceased, and the latter entered it himself, witness remaining on the outside. Witness did not see what happened when deceased first entered the house, but heard loud talking, and through the open door saw appellant's wife run across the room once or twice and deceased following her. Witness then went into the house and saw appellant behind a stove with a pistol in his hand and heard him tell deceased if he did not leave the house he would shoot him. At that time deceased, according to the witness' recollection, was in front of appellant and in the direction of the door, and just after appellant said he would shoot the pistol in his hand went off, and when it did so deceased, whose body received the pistol ball, fell out of the door to the ground and immediately died. Witness said he did not see a knife in the hand of deceased, and that he did not have a knife in his hand.

Appellant's version of the homicide differed very widely from that of the single witness for the Commonwealth. He denied that he sold any whisky that day to deceased or to his companions, and said they bought it elsewhere and before coming to his house. He also testified: That when deceased returned to his

house he was drunk and commenced to use indecent and vulgar language and to make indecent proposals to his wife in the presence of appellant, his little daughter, a Miss Duke, his nephew Walker Watson, and George Durbin; the last three being visitors to the family. That, seeing deceased was drunk, appellant remonstrated with him and informed him if he did not stop such talk he would have to leave the house, whereupon deceased said he intended to have intercourse (using an unmentionable word) "with the whole damn shooting match before he left the house," and then kicked one of the little girls under the piano, and another upon the forehead with such force as to cut the flesh. When this occurred Miss Duke and Durbin escaped to a room upstairs, and appellant's wife into an adjoining room, where she was followed by deceased, who caught her by the dress, told her he loved her better than did her husband, and attempted to throw her skirts over her head. Appellant further testified: That at this juncture he faced deceased with his pistol and told him that if he did not at once leave the house he would shoot him; that, instead of leaving the house as ordered, deceased advanced upon him and attempted to cut him with a knife, and did in fact cut his clothing in several places; that at the same time the Commonwealth's witness, Hiram Horn, who had in the meantime entered the room, also advanced upon appellant with a knife in his hand, seeing which, and believing himself and family in imminent danger of death or great bodily harm at the hands of deceased and Hiram Horn, he shot first at the former and then at the latter, with the result that the one was killed and the other driven from the house. Immediately after the shooting appellant in-

formed Sparks of what he had done, and then went
to the county seat and surrendered himself to the
civil authorities for trial. Appellant's nephew Walker
Watson, corroborated his version of the homicide
in every particular, being an eyewitness to all that
occurred. Durbin's testimony was to the same effect.
He did not, however, see the shooting, as it took
place after he ran upstairs; but after getting up-
stairs he stood near the head of the stairway and
heard much of what passed between appellant and
deceased at the time of the shooting. In addition
to the foregoing testimony, appellant proved by one
Charles Williams that deceased two weeks before
the homicide asked him to go with him to appel-
lant's home saying he intended to have intercourse
with appellant's wife (again using an unspeakably
vulgar word to indicate the act), if he had to run
appellant into the river or kill him. Evidence was
also introduced in appellant's behalf to prove, and
which did prove, that deceased, when intoxicated,
was a man of brutal passions and bad character, and
he also proved for the purpose of affecting the
credibility of the Commonwealth's witness, Hiram
Horn, that he admitted he was very much intoxicated
at the time of the homicide, and also, in substance,
that appellant was compelled to kill deceased for
the protection of his family.

In view of the foregoing facts, it must be conceded
that there is some ground upon which to rest appel-
lant's complaint that the verdict of the jury was
contrary to the weight of the evidence. If appellant
and his witnesses told the truth the killing of the
deceased was clearly justifiable. Indeed, if such in-
dignities and violence were inflicted by deceased
upon appellant's wife and children as appellant and

his witnesses testified to, he would have been un-
worthy of the name of husband or father had he
tamely submitted to them. We are, however, without
power to disturb the verdict of the jury upon the
ground that it was contrary to the weight of the
evidence. Whatever may be our opinion as to what
the finding of the jury, upon the evidence presented,
should have been, we cannot afford to disregard the
right of the jury, in the exercise of the discretion
with which the law clothes them, to accept the testi-
mony of the single witness introduced in behalf of
the Commonwealth in preference to that of appel-
lant and his several witnesses. There were, how-
ever, two errors committed by the circuit court in
the progress of the trial, either of which will compel
a reversal of the judgment complained of. The first
of these errors consisted in the admission by the
circuit court of incompetent and prejudicial evidence,
and the second in failing to instruct the jury upon
the whole law of the case. The evidence allowed to
go to the jury with respect to the sale of whisky by
appellant to deceased and his companions, shortly
before the homicide, and as to the conviction of ap-
pellant in the Lee circuit court, some time before
the homicide, for selling whisky without license, was
manifestly incompetent, and should have been ex-
cluded when objected to by counsel for appellant.
If these transgressions against the law were com-
mitted by appellant, they were in no way connected
with the homicide. They neither supplied a motive
for that unfortunate occurrence, nor threw any light
upon the question of whether it was or was not
necessary. The only purpose and effect of the in-
troduction of the evidence in question was to inflame
and excite prejudice in the minds of the jury against

appellant; Lee county being a county in which local
option prevails, and the local authorities having been
put to great trouble in enforcing it. This court has
repeatedly declared such testimony, where not a
part of the res gestae, incompetent in a case such as
this. Combs v. Commonwealth, 93 Ky. 313, 20 S.
W. 221, 14 Ky. Law Rep. 283; Baker v. Common-
wealth, 106 Ky. 212, 50 S. W. 54, 20 Ky. Law Rep.
1778; Saylor v. Commonwealth, 97 Ky. 184, 30 S.
W. 390, 17 Ky. Law Rep. 100; Pennington v. Com-
monwealth, 51 S. W. 818, 21 Ky. Law Rep. 543.

The instructions given by the trial court were
proper, but they did not embrace all the law of the
case. There were certain features connected with
the case that differentiate it from the ordinary hom-
icide. The killing occurred at the slayer's home and
in his house. According to the Commonwealth's
witness, deceased upon entering the house commenced
to behave in a boisterous manner, and, if his conduct
was as described by appellant and his witnesses, it
was appellant's right and duty to protect the mem-
bers of his family from injury or insult from de-
ceased; and if for this purpose he requested or
ordered deceased to leave the house, and he refused
to go, appellant had the right to use such force as
was reasonably necessary to eject him. The court
therefore, in addition to the instructions given,
should have instructed the jury upon this feature of
the case in substance as follows: ''If the jury believe
from the evidence that the deceased, Daniel Boone
Horn, after entering appellant's house, in the pres-
ence and hearing of his family or guests, used ob-
scene language, or assaulted any of the members of
his family, appellant had the right to command him
to leave the house, and, if he refused to do so, to

eject him therefrom by the use of such force as was necessary, or appeared to appellant reasonably necessary to that end.   And if the jury further believe from the evidence that appellant to protect his family or guests from such obscene language, or family from such assault, if any or either, ordered deceased to leave the house, and the latter failed or refused to leave, and appellant then believed, and had reasonable grounds to believe from the conduct of deceased and all the circumstances, that he or any member of his family was then in danger of death or great bodily harm at the hands of the deceased, he had the right to use such force as was necessary, or reasonably appeared to him to be necessary, for his or their protection, even to the shooting of deceased, and, if he so shot and killed the deceased under these circumstances, the jury should acquit him."

Appellant complains of other errors, but, as they were not prejudicial, we deem it unnecessary to consider them.   Being of opinion, however, that the error of the lower court in admitting the incompetent evidence to which we have referred, and in failing to fully instruct the jury, prevented appellant from receiving a fair trial, the judgment is reversed, and cause remanded for a new trial consistent with the opinion.