## Lambert v. Commonwealth.

(Decided February 10, 1928.)

## Appeal from Pike Circuit Court.

1. Homicide.—Evidence to show that defendant was guilty of homicide held sufficient to warrant submission to jury.

2. Criminal Law.—Contention of defendant that court erred in admitting incompetent evidence for state held untenable, where every objection made by defendant was sustained.

3. Criminal Law.—Objection to question as to what witness understood by decedent's statement that he was going to court witness held properly sustained, since answer would have been mere conclusion of witness.

FRANK W. STOWERS for appellant.

FRANK E. DAUGHERTY, Attorney General, and CHAS. F. CREAL, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY DRURY, COMMISSIONER—Affirming.

The defendant, James Lambert, seeks by this appeal to reverse a judgment imposing on him an imprisonment of 21 years in the penitentiary for the killing of Fayette Huffman. On Saturday evening, March 27, 1926, Fayette Huffman came to the home of the defendant who was at that time out feeding his stock. It is claimed he made some indecent proposal to the defendant's daughter and she ran out and called the defendant, who came in and found Huffman drunk. He tried to get Huffman to go to bed, but he would not do so. He tried to get him to leave, but he would not do that; but sat down with the family around the fire. About 5 o'clock, Peggy Sword, a 75 year old neighbor woman, came to spend the night. She is the chief witness for the commonwealth. According to her, Huffman talked foolishly, like a man who is drinking, but did not swear or use any vulgar language. He continued to talk and carry on in a maudlin way until about 9 o'clock, when he accused defendant and his wife of having told him a lie, whereat defendant became angry, told him he had taken all he was going to take, and that he would have to get out. Lambert began putting Huffman out of the house. When they got out into the hall, Huffman asked, "Where did I set my whisky?" Defendant said, "Damn your whisky, I know nothing about it." They quarreled there in the hall for a while,

and Mrs. Sword heard a shot. Mrs. Lambert and her daughter stepped out in the hall, talked a while, then came back to the fireplace. Mrs. Sword never heard Huffman's voice any more. Presently defendant called to his daughter, ''Did you tell Fayette he could ask for you?'' To which she answered with an oath that she did not. Presently another shot was heard, and after a while defendant came in and told Mrs. Sword he had killed Huffman. Huffman was then brought into the house and a physician summoned, but he died the next day without ever regaining consciousness

Defendant testified that after they got out of the house, he and Huffman engaged in a scuffle, and Huffman got him down. Huffman tried to get his pistol away from him, Lambert's pistol was discharged, and Lambert says he does not know how it was discharged. We shall discuss and dispose of his grounds for reversal as we reach them.

His first contention is that the court erred in overruling his demurrer to the indictment. There are two indictments in the record, both returned on the 17th of June, 1926. One is No. 492½ and the other is 493. We do not know which one was returned first. The record shows that he was tried on indictment 492½ and that indictment 493 was dismissed on October 14, 1926, which was the date of the trial. Indictment 493 was defective, but he was not tried under that indictment, and our examination of 492½ has convinced us that his demurrer was properly overruled.

His next complaint is that the verdict is contrary to law and against the evidence, but we find no merit in that contention.

His third complaint is directed to the instructions given, but we have examined them and are unable to find merit in his contention. His chief attack is made upon the self-defense instruction, but that instruction was taken from the one prepared by this court in the case of Watson v. Com., 132 Ky. 46, 116 S. W. 287.

His fourth complaint is that the court failed to give to the jury the whole law of the case, and he is arguing that, in addition to the instruction which we have said was taken from the Watson case, he was also entitled to the usual self-defense instruction, but we feel that his right to defend himself, as well as his right to defend his home, his family, and his guest under the facts in this

case, was fully presented to the jury in the instruction taken from the Watson case.

His fifth ground for reversal is that the court erred, as he says, in failing to instruct the jury peremptorily to find him not guilty, but the evidence was sufficient to take the case to the jury and to sustain the verdict, and the court did not err in submitting it to the jury.

His sixth ground is that the court erred in admitting incompetent evidence offered by the commonwealth, but we find that every objection he made was sustained, so there is no merit in this contention.

His final ground for reversal is that the court erred in not admitting competent evidence offered by him, but the only evidence he offered which was not admitted was, when his daughter was on the stand, she was asked, "What did you understand Huffman meant when he said he was going to court you?" The commonwealth's objection to that question was properly sustained. Her answer, if given, would have been merely a conclusion of the witness.

Finding no error in the record, the judgment is affirmed.