## Mays v. Commonwealth.

(Decided Jan. 24, 1933.)

J. G. ROLLINS and H. W. ROLLINS for appellant.

BAILEY P. WOOTTON, Attorney General, FRANCIS M. BURKE, Assistant Attorney General, GOLDEN, GILBERT & GOLDEN for appellee.

OPINION OF THE COURT BY JUDGE RATLIFF—Affirming.

The appellant, Albert Mays, was indicted and tried in the Bell circuit court for the murder of Ross Barker,

and convicted for manslaughter. His punishment was fixed at 15 years in the penitentiary. He appeals.

A consideration of this case and a proper disposition of the question presented requires a resume of the evidence. That in behalf of the commonwealth shows about the 24th of February, 1931, Ross Barker, the deceased, and his companions were in Middlesboro, when they engaged in conversation as to where they could procure whisky. It was suggested by one of those present that they go to the home of the appellant and procure it. They went by automobile to his home, which was about three miles from Middlesboro. On arriving, they parked the car near his home, and the deceased and Joe Britton left the car, the companions remaining in it, and went into the home of appellant. About the time of their arrival, another car drove up and Ida Woods (colored) got out of it and went into appellant's home. When they approached his home, Mrs. Mays, wife of appellant, met them at the door with a light and invited them in. When they entered the room the appellant was lying on the floor behind the stove. Appellant said, "I have been talking about you boys today." And further said, pointing or referring to deceased, "I want to shoot that d—— s—— of a b—— there. I want him to be standing up so I can see him fall." Deceased replied, "No, you don't want to shoot me." Appellant retorted, "No, I wouldn't do it, I was just kidding. There is but one d—— s—— of a b—— that I want to cross my path; that is that d—— Cloy Byrd." (Cloy Byrd was a policeman of Middlesboro and was not present.)

The next occurrence was Ida Woods asked Mrs. Mays if she had anything. Mrs. Mays replied, "I guess so." Mrs. Mays then left the room and returned with a pint of whisky, and delivered it to Ida Woods; she paid Mrs. Mays for it. Ida Woods then passed the whisky around to the boys who were present; the deceased and Joe Britton took a drink. Ida Woods then departed. The appellant exhibited a pistol and said, "This is the way I do boys when they come around me drunk or drinking." About this time a boy named Bob (the record does not disclose his last name) entered the room. Appellant asked him if he had any whisky. Bob took a bottle of whisky from his pocket and handed it to appellant, who took a drink and handed it to Joe

Britton, who also took a drink. Then Earnest Ward, a companion of Barker's, entered the room and the appellant asked him for whisky. He produced a bottle of whisky and appellant drank of it. Ward then left the room. The deceased approached Mrs. Mays and told her he wanted a pint and that he did not have sufficient money to pay for it, but would pawn his vest for the balance. She refused to let him have the whisky on his proposed terms, saying that they had had a case in London that had cost them a lot of money, and that they could not collect those kind of debts. He then went to where the appellant was lying on the floor, and asked him about getting a pint of whisky. Appellant said, "Hell no, G—— d—— you; do you know who you are talking to?" Deceased said, "I reckon I do; Mrs. Mays." Appellant said, "G—— d—— you, that is my wife." Deceased said, "If it is, I haven't said anything out of the way." Appellant said, "G—— d—— you, don't get hot, or I'll sure as hell cool you." Barker, deceased, raised up from his chair and appellant fired four or five shots, two of which took effect in the body of the deceased, from which he died in about one week thereafter.

The evidence in behalf of appellant is substantially that, Ross Barker and Joe Britton came into his house and sat down behind the stove near him. Barker told Mrs. Mays he wanted a pint of whisky. She informed him she did not have any whisky, and he said he would wake up the appellant and get some. Mrs. Mays asked him not to wake Albert, but, notwithstanding her protests, he did so, and told him he wanted a pint. Appellant responded that he had no whisky. Barker, using dirty and vile language, said, "Don't hand me no —— like that." Appellant said, "Buddy, if you don't have no respect for me, have a little for my family." Barker, again using similar language, said, "G—— d—— you and your —— family too."

To be more accurate, we quote the questions and answers as disclosed by the evidence of Calvin Mays, appellant's 15 year old son.

"Q. When he handled the second vulgar talk, tell what he was doing; what happened then? A. My father told him, said, don't get too hard, he said, if you want to get hard about it, get up and

do something about it, he told him he didn't want to do anything about it, he told him to get up and do something about it, and started walking toward him and put his hand back on his hip, he raised up and shot him.

"Q. What was Ross Barker doing when your father commenced to shoot? A. He started walking toward him and fixed his coat up like that and put his hand on his hip.

"Q. Did your father ever get up off of the floor? A. No, sir."

This evidence was substantially corroborated by several witnesses of the appellant.

Appellant argues that the court erred (1) in overruling his motion for a continuance; (2) in admitting incompetent evidence; and (3) in the instructions to the jury.

The affidavit for a continuance discloses the absence of no witness. It presents only the lack of sufficient time and opportunity to prepare for trial. It disclosed that he was returned from the Laurel county jail to Bell county nine days before the beginning of the trial. All witnesses who had an opportunity to have knowledge of the facts concerning the killing were present and testified either for the commonwealth or the appellant. His defense was ably and well presented by learned counsel. It is very clear that the court, in refusing a continuance, did not abuse his substantial discretion. Carsons v. Commonwealth, 243 Ky. 1, 47 S. W. (2d) 997; Miller v. Commonwealth, 200 Ky. 435, 255 S. W. 96; Begley v. Commonwealth, 200 Ky. 563, 255 S. W. 147.

It is insisted that the court erred in admitting evidence respecting the sale of whisky by appellant's wife to Ida Woods. This evidence was a prelude to create inextricably a part of the transaction between the deceased and the appellant, in which the killing occurred. No error was committed in the admission of this evidence. Sneed v. Commonwealth, 236 Ky. 838, 34 S. W. (2d) 724; Newberry v. Commonwealth, 222 Ky. 630, 1 S. W. (2d) 1045.

It is shown that the alleged sale of whisky to Ida Woods was the starting subject and the beginning of

the transaction which led to the controversy and the killing of the deceased. The two transactions were the same subject-matter, the same place, and practically the same time; only a very few minutes intervening between the alleged sale of whisky to Ida Woods and the controversy between the appellant and deceased. Counsel for appellant in their brief cites, as authority in support of their contention, the cases of Shepherd v. Commonwealth, 119 Ky. 931, 85 S. W. 191, 27 Ky. Law Rep. 376; Watson v. Commonwealth, 132 Ky. 46, 116 S. W. 287; Baker v. Commonwealth, 106 Ky. 212, 50 S. W. 54, 20 Ky. Law Rep. 1778. An examination of these cases will disclose that the facts in them are not analogous to those in the present case, and therefore not applicable.

It is insisted that the court erred in failing to instruct the jury as to the appellant's rights to defend his family. There is no evidence tending to show any demonstration or threats of the deceased toward the appellant's family. There is evidence that the deceased used some profane, obscene, and vile language in the presence of appellant's wife and children, but nothing more. The appellant did not ask him to leave his house, or otherwise object to his presence. According to the testimony of appellant's witnesses, when the deceased used the alleged profane, obscene, and vile language complained of, the appellant only said to him, "If you don't have no respect for me, respect my family." Appellant in support of this insistence relies upon the case of Watson v. Commonwealth, supra, 132 Ky. 46, 116 S. W. 287, in which case this court, after reversing the case because of the failure of the trial court to properly instruct the jury as to the defense of the accused's family, and for other errors, indicated the instructions the trial court should give the jury upon a retrial of the case, which indicated a defense instruction as to accused's family. But the evidence in the Watson Case, supra, tended to show that the deceased was assaulting the accused's wife, and the court further predicated the instructions as indicated, upon the theory that the accused should first ask the deceased to leave his house; then the accused had the right to eject him, etc.

Conceding that the deceased used the vile and obscene language complained of, the appellant had no

90

right to shoot him or resort to other violence, unless he had first asked him to leave his house.

Inasmuch as there is no evidence in this case tending to show that the deceased was attempting or threatening to do bodily harm to any member of appellant's family, and that appellant did not request him to leave his house, it follows that an instruction as to the defense of appellant's family was unnecessary, and the court did not err in failing to give such instructions. Triplett v. Commonwealth, 245 Ky. 149, 53 S. W. (2d) 348.

Perceiving no error prejudicial to the substantial rights of the appellant, judgment is affirmed.