# Poe v. Commonwealth.

(Decided June 24, 1932.)

C. J. WADDILL and FOX & GORDON for appellant.

BAILEY P. WOOTTON, Attorney General, and H. HAMILTON RICE, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE PERRY.—Reversing.

The appellant, D. C. Poe, appeals from a verdict and judgment of the Hopkins circuit court, by which he was found guilty of voluntary manslaughter and sentenced to ten years in the penitentiary under an indictment for the willful murder of John Hankins.

The facts appear to be these: The killing occurred at the home of appellant near Dalton, Hopkins county, Ky. He was standing on his front porch with his wife, little son, and mother-in-law when he shot and killed John Hankins. The shooting occurred on Sunday after-

noon, September 4, 1930. Poe and his family had attended the funeral services of a friend, conducted at a church nearby, after which they were driven home in their car by Herbert Kirkwood, a colored boy. After returning home, according to appellant's testimony, they first sat on the front porch awhile, when the accused, D. E. Poe, and Herbert Kirkwood left there and went to the back porch. Soon afterwards, John Hankins, the deceased, accompanied by two small boys, his brother, Woodrow Hankins, and nephew, A. O. Hankins, drove up to the Poe home in a Ford car, stopping it, not at the entrance, but behind a deep embankment some 70 feet beyond. Hankins walked from his car to the entrance of the Poe home. Poe's little son, on seeing him, announced to his father that some man was out in front. Poe then left the porch, going through the house out into his front yard, where he met Hankins.

There they engaged in a conversation for some minutes, when it appears Mrs. Poe, who it is in evidence had been insulted by Hankins a few days before, came out to them and calling Hankins a "rake" ordered him to leave the place. It further appears that, upon such order being given, the accused also told him to leave as ordered by his wife, Mrs Poe. Hankins, angered and cursing, then went to his car, left near the side yard. Poe testifies that he heard him cursing and abusing his wife as he left for his car, calling her a "God damned old black bitch." Upon hearing this, Poe testified he inquired of his wife as to its meaning, when she told him that Hankins had visted her home a few days before and had made insulting proposals to her.

It is further testified by the accused and a number of his family and witnesses that the deceased, as he went to his car and while standing there, continued to curse the accused's wife, Mrs. Poe, and that he appeared, when reaching the car, to take a pistol therefrom—others of the witnesses say they saw him take a blue pistol from the back of the car and place it in his overalls' pocket—and then went around the rear of the car for some 8 feet and started as if again going to the accused's home.

It is further in evidence, and admitted, that, as the deceased left the yard and went to his car, appellant stepped into his house and returned to his front porch with his rifle, where were also his wife, his mother-in-law, and little son, Talmadge.

It appears too that Poe, upon coming back out onto the porch with his rifle, saw Hankins as he was returning from his car, walking from the rear of it towards the house, and that, as appears in accused's testimony, when accused came out, "Hankins stopped and ran his hand in his pocket and I thought he was going to shoot," when accused fired, shooting the deceased through the back, instantly killing him; that all this happened in three or four minutes, his wife was crying, and "he didn't mean to kill him unless he tried to kill me."

There was, as is usual in cases of this kind, much conflicting evidence, the witnesses for the commonwealth stating that the deceased at the time of driving by Poe's home on the Sunday afternoon in question was going to Dr. Brown's for medicine, but, upon seeing Mr. Poe standing nearby in his yard, stopped his car and went over to join him in a friendly chat and did talk with him for some fifteen or twenty minutes, when he returned to his car, telling the boys to "come on and let's go"; that there was no trouble or quarrel had between them during the visit; that the deceased was not then drunk or drinking; that he had no pistol either on his person or in the car, nor did he curse or use insulting language to the accused or his wife.

There was much evidence to the contrary to support and corroborate the accused's version of the circumstances under which he shot and killed the deceased; two of his witnesses, Rufus Yarbrough and Carson Herron, testifying that they had, just a few minutes before the killing of the deceased, driven by appellant Poe's home and there they saw John Hankins standing by his car, shaking his hand at Mrs. Poe and cursing and abusing her in vile terms; that they saw him take from the car and place in the pocket of his overalls a blue pistol, and shortly thereafter heard the report of a gun, though at the time they were too far away to see who did the shooting or if any one was shot. W. F. Love, a witness for the accused, testified that on the Saturday before the killing he was with the deceased at Dawson Springs, where he had some drinks with him, and that Hankins then told him he was going back to see "his woman" at Cack Poe's, and that he was able to take care of himself.

Upon the evidence being heard and the instructions given by the court, the jury return a verdict finding the defendant guilty of manslaughter, for which his punish-

ment was fixed at ten years' confinement in the penitentiary.

Appellant's motion and grounds for a new trial being overruled, he prosecutes this appeal from the judgment, seeking its reversal upon the ground that the self-defense instruction given by the court was prejudicially erroneous. This instruction complained of and given by the court is as follows:

"The court instructs the jury that although you may believe from the evidence that the defendant shot and killed John Hankins, yet the court instructs you that at the time he did so, if he did do so, that he or his wife was then and there in eminent danger of suffering death or some great bodily harm at the hands of the said John Hankins, and it then and there appeared to defendant that there was no other safe means to avert said danger to the defendant real or apparent, other than to shoot and kill the said John Hankins, then the defendant had the right to so shoot and kill the said Hankins and if he did kill him under such conditions, you should find the defendant not guilty on the ground of self-defense or the defense of his wife and apparent necessity. The danger which authorizes one to shoot and kill in his self-defense or in the defense of another may be real danger or only apparent danger."

Appellant by brief of counsel strongly insists that this instruction was erroneous for the reason (1) that it left to the jury the determination of the fact of danger; (2) that the jury was required by the instruction to find that the danger was "eminent"; (3) that the instruction as given not only left the fact of danger, real or apparent, to the jury, but did not require that they should believe from the evidence that such danger existed; (4) that the instruction was erroneous by the modification that "there was no other safe means to avert the danger" to the defendant; and (5) that the court erred in not further instructing the jury as to the right of appellant to protect himself, his family, and his home.

We have carefully considered these objections made to this self-defense instruction given the jury upon the trial, and have concluded that the same as given was prejudicially erroneous, first, in leaving to the jury to determine the fact of danger rather than instructing it

that the determination of this fact of danger, real or apparent, must be left to the defendant as it appeared to him at the time in the exercise of a reasonable judgment. Wagner v. Commonwealth, 108 S. W. 318, 32 Ky. Law Rep. 1185; Hoskins v. Commonwealth, 145 Ky. 580, 140 S. W. 1040; Cockrill v. Commonwealth, 95 Ky. 22, 23 S. W. 659, 15 Ky. Law Rep. 328.

The second objection urged, that the instruction was erroneous in requiring the jury to find the danger was "eminent" instead of imminent, we do not here decide, as it is clear that the use of such word was a mere matter of inadvertence on the part of the court, which is not likely to occur again.

The third objection, that it is error to have not required the jury to have found its verdict, "or have believed from the evidence," we conclude is meritorious, and should be sustained.

The fourth objection as urged by appellant, however, we conclude is without merit, as the use of the words "safe means to avert or avoid the danger" has been approved in numerous decisions of this court, and is discussed at length in the recent case of Slone v. Commonwealth, 236 Ky. 299, 33 S. W. (2d) 8, wherein an exhaustive review of the difference between the sense conveyed to the jury in the use of the word "escape" and the words "avoid" or "warding off" or "averting" is to be found. See, also, Oliver v. Com., 236 Ky. 672, 33 S. W. 684; Caudill v. Com., 234 Ky. 142, 27 S. W. (2d) 705; Greer v. Com., 164 Ky. 396, 175 S. W. 665.

As to the last complaint urged, that the instruction was erroneous in not giving the whole law of the case by instructing the jury as to the right of self-defense, where the plea was that the accused shot in "defense of himself, his family and his home," by not including in the self-defense instruction the further instruction as to the right of the accused to protect himself, his family and his home, the ground of this objection was considered and discussed by this court in the case of Watson v. Commonwealth, 132 Ky. 46, 116 S. W. 287, 289, wherein the court held that the self-defense instruction as given by the trial court was proper, but did not embrace all the law of the case, and where there was evidence that the deceased had grossly insulted defendant's wife and other members of his family, after entering defendant's home, and refused to leave when ordered to go, that it was error to omit from the self-defense instruc-

tion a charge upon the defendant's right to protect himself and the members of his family from injury under such circumstances, and held that there should have been given, in order to embrace the whole law of the case as to the accused's right of self-defense, the further instruction upon such feature of the case, in substance, as follows:

"If the jury believe from the evidence that the deceased, Daniel Boone Horn, after entering appellant's house, in the presence and hearing of his family or guests, used obsence language, or assaulted any of the members of his family, appellant had the right to command him to leave the house, and, if he refused to do so, to eject him therefrom by the use of such force as was necessary, or appeared to appellant reasonably necessary to that end. And if the jury further believe from the evidence that appellant to protect his family or guests from such obscene language or family from such assault, if any or either, ordered deceased to leave the house, and the latter failed or refused to leave, and appellant then belicved, and had reasonable grounds to believe from the conduct of deceased and all the circumstances, that he or any member of his family was then in danger of death or great bodily harm at the hands of the deceased, he had the right to use such force as was necessary, or reasonably appeared to him to be necessary, for his or their protection, even to the shooting the deceased, and, if he so shot and killed the deceased [under these circumstances], the jury should acquit him."

We are of the opinion that a like instruction was here applicable to the facts in evidence as to the circumstances of the killing by the accused of the decedent in the instant case, and the court will, upon a retrial of this cause, give such further instruction, upon like evidence being again given upon retrial.

We are therefore constrained to conclude that the objections made that the self-defense instruction given in the instant case was prejudicially erroneous, as hereinabove announced, are meritorious, and that for such reason the judgment of the trial court will have to be, and is, hereby reversed.