## Haywood v. Commonwealth.

(Decided April 18, 1933.)

SAM SPARKS for appellant.

BAILEY P. WOOTTON, Attorney General, and H. HAMILTON RICE, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE CLAY—Reversing.

This is an appeal from a judgment convicting appellant of manslaughter and fixing his punishment at three years' imprisonment.

About 11 o'clock a. m., December 7, 1931, Russell Brown came to the home of Emma Binion, appellant's half-sister, carrying a bucket of moonshine whisky. A few minutes before his arrival Bertha Binion, accompanied by Jim Thompson, had stopped at the house. On going into the house, Brown offered Bertha and Thompson a drink, which they accepted. Later on Bertha and Brown became intoxicated and began quarreling. Emma Binion tried to get them to leave. On their refusal she went to the door and "hollered" for some one to help her. About that time appellant came in and asked what was the matter. She told him that they were both drunk and quarreling. Appellant then told Brown to go on out. At this juncture Brown hit Emma and knocked her down, and appellant ordered him out of the house twice. Brown shut his fist, shook it at appellant, and said he would whip him right in front of his sister. Appellant then pulled his gun and started shooting. Brown was wounded twice in the leg. According to Emma Binion and Arnold Binion, Brown was not armed and did not have a poker in his hand. However, there was evidence that Arnold was

not present when the shots were fired. On the other hand, appellant testified that Emma Binion, his half-sister, called him by name and asked him to come and help them. When he entered, he found Brown drinking, and his sister said, "Russell Brown is killing us." Appellant asked Brown to go on away and not fight with the women. Brown replied, "I am going to beat you up here before your sister and show her what I can do for you." Appellant again asked Brown to leave, but Brown refused and struck Bertha Binion, knocking her down on the floor. Brown also struck Emma Binion and knocked her against the wall. Emma then asked appellant to put Brown out of the house. Brown then got a poker with a large end on it and told appellant he would make a necktie out of the poker over his head. Appellant jumped behind a stove and tried to get away, but Brown had him in a corner and cut off from the door. Brown changed the poker to his left hand and cursed appellant, telling him he had him where he wanted him, and that he would blow appellant's heart out. Appellant then fired three shots. Brown opened the door and went out on the porch. Appellant passed him and went over to the railroad and then back home. Appellant is corroborated by Bertha Binion. There was further evidence that Brown had threatened appellant, and that these threats had been communicated to him.

At the conclusion of the evidence for the commonwealth, appellant moved for a directed verdict on the ground that the corpus delicti was not proved. The term "corpus delicti" means the fact that a crime has been committed by some one; and in murder has two components—death as the result, and the criminal agency of another as the means. Both of these must be established or there can be no conviction. Roberson's New Kentucky Criminal Law & Procedure, sec. 282. According to Dr. J. M. Rose, who treated Brown for his wounds, Brown was alive when he last saw him. It is true that Dr. Rose testified that he had heard that Brown was dead, but on motion of the defense this statement was excluded from the jury. Aside from the statement, which was properly excluded as mere hearsay, no witness testified that Brown was dead, or to any facts from which his death could be reasonably inferred. In the circumstances the corpus delicti was not established, and appellant's motion for a directed ver-

dict should have been sustained. Commonwealth v. Murphy, 109 S. W. 353, 33 Ky. Law Rep. 141; Morris v. Commonwealth, 46 S. W. 491, 20 Ky. Law Rep. 402.

Another contention is that the court erred in not giving an instruction embodying appellant's right to protect the home of his half-sister. The right to defend one's home is not confined to cases of attempted violent entry or attacks from the outside, but may be resorted to as against one who, after entering the home, uses obscene language, or assaults any member of the family or guests present in the household. Watson v. Commonwealth, 132 Ky. 46, 116 S. W. 287. It is also the rule that, wherever the owner is justified in defending his home, his servants and guests may exercise the same right, Hendrickson v. Commonwealth, 232 Ky. 691, 24 S. W. (2d) 564, and even a bystander may be called by the owner to aid in ejecting another from his house, State v. Roan, 122 Iowa, 136, 97 N. W. 997; People v. Adams, 52 Mich. 105, 17 N. W. 715; State v. Lockwood, 1 Pennewill (Del.) 76, 39 A. 589. In the circumstances, no reason is perceived why appellant, when called on by his half-sister, did not have the same right as she did to protect her home and those present against the obscene language and assaults of Brown. As the jury, in the absence of an instruction embodying that right, may have concluded that appellant was the aggressor, we are of the opinion that the failure to give such instruction was prejudicial error. Hendrickson v. Commonwealth, supra; Watson v. Commonwealth, supra; Poe v. Commonwealth, 244 Ky. 649, 51 S. W. (2d) 937. In the case of Watson v. Commonwealth, supra, the court directed the kind of an instruction to be given where the homicide was committed by the owner of the home in an effort to eject the deceased and protect those present from injury or insult at his hands. Modifying that instruction to meet the facts of this case, the court on another trial will instruct the jury as follows:

"If you believe from the evidence that on the occasion in question the deceased, Russell Brown, used obscene language in their hearing, or assaulted any of the inmates of Emma Binion's home, and that Emma Binion called on defendant to assist her in ejecting him from her home, then the defendant had the right to command the deceased to

leave the house, and if he refused to do so to eject him therefrom by the use of such force as was reasonably necessary to that end; and if you further believe from the evidence that defendant to protect those present from such obscene language or assault, if any of either, ordered the deceased to leave the house and the latter failed or refused to leave, and defendant then believed and had reasonable grounds to believe from the conduct of the deceased and all the circumstances that he or any one present was then in danger of death or great bodily harm at the hand of the deceased, he had the right to use such force as was necessary or reasonably appeared to him to be necessary for their protection, even to the shooting of deceased, and if he so shot and killed the deceased under these circumstances you will acquit him.''

In view of another trial, it is proper to add that the court should have admonished the jury that the evidence attacking the general moral character of appellant, and of other witnesses who testified on his behalf, was admissible solely for the purpose of affecting their credibility, and not as conducing to prove appellant's guilt of the crime charged.

Judgment reversed and cause remanded for a new trial consistent with this opinion.